[No. B034339. Second Dist., Div. One. Sept. 29, 1989.]

DELTA AIR LINES, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Defendant and Appellant.

Alston & Bird, Helene Z. Cohen, Bryan, Cave, McPheeters & McRoberts, M. Sean McMillan, D. Michael Keen and Kelly S. Jennings for Plaintiff and Respondent.

OPINION

HANSON, J.—On March 8, 1983, plaintiff Delta Air Lines, Inc. (hereinafter Delta) brought an action pursuant to Revenue and Taxation Code section 6933[1] to recover sales and use taxes and interest totalling $37,687.68, paid under protest to the State Board of Equalization of the State of California (hereinafter Board). Plaintiff also sought declaratory relief and the imposition of a constructive trust. Board was the named defendant.

Trial was by the court, sitting without a jury. The parties stipulated to certain facts, presented agreed-upon exhibits and deposition testimony, as well as the testimony of two witnesses. The trial court awarded judgment to plaintiff Delta. Defendant Board has filed a timely notice of appeal from the judgment. We reverse.

FACTUAL SUMMARY

This dispute arose as the result of an audit of plaintiff's records by the Board from 1978 to 1980. (§§ 7053, 7054). The background of the dispute can be simply stated. Fuel purchased in California by common carriers, used by them while conducting the business of interstate transportation, is subject to a limited degree of taxation by the State of California. The fuel necessary to reach the common carrier's first out-of-state destination is subject to the state sales tax (Sales and Use Tax Law, § 6001 et seq., sometimes referred to in our discussion as the Law) but the remainder, used for transportation elsewhere, is exempt, pursuant to section 6385, subdivision (c). At issue in this case was the procedure employed by the Board during the audit in question for computing the portion of fuel purchases subject to tax and the portion exempt. Resolution of this issue turns on the

---

[1] All section references in this opinion shall be to the Revenue and Taxation Code unless otherwise indicated.

validity of Board Sales and Use Tax Regulation 1621(d)(1) (Regulation 1621(d)(1)), as amended in 1977.

In the trial court, the parties stipulated that Delta is a Delaware corporation and at all times material herein has been lawfully qualified and registered to conduct business in California. Delta is also a common carrier certified by the Civil Aeronautics Board, and is engaged in interstate air transportation of passengers, mail and cargo in the United States, including California. Defendant Board is an agency of the State of California charged with the duty of administering the Law.

The parties also stipulated that during a period beginning in 1978 and ending in 1980, the audit staff of the Board conducted a sales tax audit of Delta for the period January 1, 1975, to September 30, 1978, the "Audit Period." Delta and the Board waived the statute of limitations set forth in section 6487 for the period under audit, until April 30, 1981.

During the "Audit Period" Delta had provided air transportation emanating from San Diego, Los Angeles, San Francisco, Oakland, and San Jose to out-of-state destinations. Delta purchased jet aircraft fuel from its vendors (gas and oil companies) in California under bills of lading for immediate shipment to points outside California, for use in the conduct of Delta's business as a common carrier during the "Audit Period." Delta provided its vendors with a combined bill of lading and certificate supporting bill of lading (an exemption certificate) authorized by the Board for each such purchase for shipment outside the state, and claimed exemption from sales tax for such shipments pursuant to section 6385, and Regulation 1621.

Delta's bills of lading, as required, showed each respective fuel vendor as consignor and indicated that a portion of the purchased jet aircraft fuel was consigned to Delta for delivery to a specified destination outside of California.

The parties further stipulated that each bill of lading was prepared by Delta during the "Audit Period" based on *estimated consumption* of fuel, contained all other requisite information, and was submitted to the vendor within 30 days of delivery of the jet aircraft fuel covered by such bill of lading. (The practice of estimating consumption has been accepted by the Board apparently as a matter of necessity because conditions of flying and fuel consumption vary from flight to flight.) The parties stipulated that in preparing the bills of lading, Delta computed the amount of jet aircraft fuel exempt from sales tax for each out-of-state flight by using an estimate of

each aircraft's consumption of fuel to its first out-of-state destination, adding taxi fuel and a 1 percent adjustment as specified by the regulation.

It was stipulated that Delta did not record the actual fuel remaining upon arrival of each flight for which a bill of lading had been issued, but relied on the estimate of fuel consumption from its flight plans in preparing the bills of lading.

The form of the bill of lading authorized by the Board provides that the 1 percent adjustment is to accommodate variances (caused by possible contingencies such as a change in flight plans, holding time before landing, or the necessity of landing at an airport other than the one in the original flight plan) in fuel consumption in the calculation of the amount of fuel consumed to the first destination outside California and the amount subject to sales tax.

In its previous audits of Delta, the Board had verified the accuracy of the estimates used by Delta on its bills of lading by requiring a five-day test of actual fuel consumption by Delta. To verify its estimates on bills of lading during this "Audit Period," Delta conducted a five-day test of its actual fuel consumption during the period December 11, 1978, through December 15, 1978.

In past audits, and for the period January 1, 1975, through December 31, 1977, in the audit period at issue, the Board applied the five-day test period results in the aggregate to bills of lading which Delta had filed for the period, with the effect that credits for overpayments of tax as measured by the test results were offset against charges for underpayments of tax, as also measured by such results.

However, the Board had amended Regulation 1621(d)(1) effective November 27, 1977, adding time requirements for the filing and *correction* of bills of lading under section 6385. This meant that Delta and other common carriers would henceforth be required to change "estimated" fuel consumption computations to *actual* fuel consumption computations on these out-of-California flights within the time specified in the regulation. During the "Audit Period," Delta had not observed these time requirements.

During the audit, the Board instructed the audit staff *not* to allow offsets for overpayments in sales tax audits of airlines any longer; thus, for the Delta audit of the period of January 1, 1978, through September 30, 1978, the last nine-month segment of the "Audit Period," the auditor applied the

test results assessing additional sales tax if the test flight consumed more fuel than the amount for which sales tax reimbursement had been paid pursuant to the bill of lading filed based on the estimate, but refused to offset credits for the overpayment of sales tax reimbursement when the test flight consumed less fuel than the amount for which tax had been paid pursuant to the bills of lading filed based on the estimate.

In other words, the audit staff stopped "netting" the overpayments and underpayments to arrive at what Delta actually owed—or was owed—by the Board during the nine-month period in question. The rationale for this change in approach by the Board was that the only way Delta could have recovered overpayments of sales tax by its vendors during the nine-month period was to follow the procedure set forth in Regulation 1621, by presenting corrected bills of lading to the vendors within the time frame of the regulation; Delta would have then obtained a credit from the vendors, who would in turn have then obtained refund of overpayments from the Board. No evidence was presented, by stipulation or otherwise, concerning Delta's contractual relationships with its vendors, either past or present; the record does not show the method, if any, by which Delta and its vendors would acknowledge such "credits" of overpayments of sales tax on particular flights.

The test period results for the nine-month period from January 1, 1978, through September 30, 1978, reflected that Delta had overpaid its sales tax reimbursement in the aggregate on fuel purchases by approximately one-half of a percent (0.5 percent), or a total of $2,565.10, but the audit was conducted too late for Delta to comply with the time requirement of Regulation 1621, i.e., now forty-five days, on the 1978 transactions.

The Board, however, refused to permit the offset for overpayments during the nine-month period, and assessed Delta on those transactions showing underpayment. The Board's position was, and remains, that Delta could not recoup the overpayment.

While the Board had notified the airlines, including Delta, of the 1977 amendment to Regulation 1621, the Board had issued no instructions to Delta or the other airlines concerning implementation of the amendment. As the result of said audit, Delta received a determination dated April 24, 1981, from the Board assessing additional sales tax for the period January 1, 1975, through September 30, 1978, in the amount of $289,003.77 plus interest of $148,276.71, for a total of $437,280.48. This assessment included a number of items upon which Delta conceded.

Delta paid the assessment and interest due on April 29, 1981, but filed a petition for redetermination with respect to the assessment covering the nine-month period from January 1, 1978, through September 30, 1978. That was the period during which an offset for overpayments was not allowed. The amount sought by Delta was $35,122.58, representing disallowed overpayment on individual flights by Delta; Delta also filed a claim of $2,565.10 plus interest, the "net overpayment" by Delta during the nine months in question, an amount which assertedly would have been due Delta had the Board followed its previous audit technique of applying the test results in the aggregate from January 1, 1978, through September 30, 1978.

Delta waived appearance at a preliminary hearing by the Board on the petition. Delta received a decision and recommendation from the Board dated February 25, 1982, that the taxes be redetermined without adjustment. (Delta also received an additional assessment on June 29, 1982, covering the audit period of January 1, 1975, through December 31, 1977; Delta chose not to protest this additional assessment.)

Having requested an oral hearing before the Board, Delta appeared on August 3, 1982, claiming that it was unfair for the Board to abandon the auditing practice of "netting," i.e., taking into account both overpayment and underpayment, and claiming further that Delta was being penalized for overestimating fuel consumption and overpaying rather than underpaying the sales tax owed. Following the hearing, the Board issued a notice of determination dated December 8, 1982, seeking an additional $274,324.12 for the period from January 1, 1975, through September 30, 1978. The Board did not alter its position that during audits it would no longer "net" overpayments and underpayments. Delta paid all sums claimed due, with interest, and proceeded with this litigation. As indicated, the trial court awarded Delta judgment.

### STANDARD OF REVIEW

This matter proceeded below largely on stipulated, uncontroverted facts. During the trial proceedings, there was some dispute between the two witnesses presented, one by Delta and one by the Board, as to the application of the audit sample test results, but there was ultimately no dispute between the parties as to the *accuracy* of the sample or the results; the basic issue was the lawfulness of the change implemented by the Board midaudit, as described above.

■ Since the material evidence below consisted of uncontroverted facts, this court as the reviewing court in a tax dispute is not bound by the

findings of the trial court, but exercises the function of independent review. (*Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 893-894 [122 Cal.Rptr. 249].) In addition, interpretation of administrative rules and regulations, as well as statutes, has always been a particular function of an appellate court, involving primarily questions of law.

CONTENTIONS OF THE PARTIES

The Board claims that (1) Delta had no standing to seek a refund of the alleged overpayments of sales tax paid by its fuel vendors to the Board; (2) no refund is due to anyone because Delta's vendors failed to qualify for a refund on sums paid pursuant to the overstated fuel estimates, due to Delta's failure to comply with the provisions of Regulation 1621. The Board contends that (3) the regulation lawfully limits the time for correction or return of the bill of lading, and that Delta cannot attack the regulation itself or raise other issues than those stated by the Board on appeal because Delta's claim for refund did not raise such issues.

Delta claims that (4) the Board exceeded its authority in promulgating Regulation 1621; (5) Delta's use of estimates regarding fuel consumption is proper; (6) the Board's audit procedure is not supported by the language of the regulation and is arbitrary, capricious and patently unreasonable; (7) Delta should be credited for overpayments as well as debited for underpayments during the "Audit Period"; and finally, (8) Delta appropriately raised all of these issues on both the administrative level and in the lower court. Our discussion follows.

DISCUSSION

I.   Standing to Sue

The Board contends that Delta had no standing to bring an action for refund in the superior court. The Board argues that pursuant to the Law, Delta was not the seller to whom the Law applies; Delta does not pay the tax on the fuel it purchases in California, but that tax, when due, is paid by the vendors who sell fuel to Delta. Since Delta is not the taxpayer, the Board argues, Delta's complaint should have been dismissed.

This disarmingly simple argument is based on the concept that "[a]n action can only be brought by a real party in interest, and a complaint which fails to disclose the right to sue is not only subject to a general

demurrer but may be challenged at the trial or on appeal despite failure to demur." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 856, p. 299.)

Generally, persons who have not paid the tax in question are barred from bringing suits for refund of that tax. (*State Bd. of Equalization* v. *Superior Court* (1980) 111 Cal.App.3d 568, 570 [169 Cal.Rptr. 3].) This rule has been applied in cases involving the Law where the ordinary tripartite situation appears, involving a purchaser (consumer), a seller (retailer), and the Board. "The sales tax is not a property tax on the buyer, but an excise or privilege tax on the retail seller, based on the gross receipts of sales of tangible personal property at retail in this state." (9 Witkin, Summary of Cal. Law (9th ed. 1989) § 294, p. 352; see § 6051 and *De Aryan* v. *Akers* (1939) 12 Cal.2d 781, 783 [87 P.2d 695].)

There have been some refinements of the rule barring suits for refund to persons not technically regarded as "taxpayers," however, resulting from unusual circumstances which have been subject to judicial review. In *Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637], the California Supreme Court required the plaintiff vendor, upon obtaining refund from the Board, to transmit that refund to its customers, the purchasers-consumers, who were not parties to the suit. This was ordered by the court to prevent unjust enrichment of the vendor.

In *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153], the California Supreme Court fashioned a procedure whereby purchasers entitled to a refund could join with their vendors in an action against the Board for that refund. The court declared that while the procedure stopped short of "compelling the Board to repay the customers directly, nevertheless the Board cannot use the refund procedure to abdicate its responsibility to the customer, particularly where the Board stands to unjustly profit under such circumstances." (*Id.* at p. 800.)

Thus there is precedent for judicial intervention in matters involving the Board to prevent unjust enrichment, intervention intended to ensure some remedy for persons who have been overtaxed.

More importantly, however, it can be persuasively demonstrated that the Law has treated common carriers such as Delta differently than ordinary purchasers or consumers. The Law has prescribed rules specifically applicable to common carriers who engage in *interstate commerce* because their rights and duties must be determined "against a background of federal constitutional law." (*Satco, Inc.* v. *State Bd. of Equalization* (1983) 144

Cal.App.3d 12, 16 [192 Cal.Rptr. 449].) (Italics added.) Unlike ordinary intrastate purchasers, a substantial portion of the fuel purchases of common carriers used to transport to out-of-state locations is exempt, pursuant to section 6385.

At the time material to this dispute, that statute provided, in pertinent part, that "[t]here are exempted from the computation of the amount of the sales tax the gross receipts from the sale of fuel and petroleum products to a water, air, or rail common carrier, for immediate shipment outside this state for consumption in the conduct of its business as a common carrier after the first out-of-state destination. . . ." As was explained in *Satco, Inc.* v. *State Bd. of Equalization, supra,* 144 Cal.App.3d 12, 16-17, "[t]he purpose of section 6385 is to place interstate common carriers on an equal constitutional footing with other out-of-state purchasers. [Citation.] Retail sales are subject to the sales tax if delivery occurs in California. . . . Section 6385 exempts a sales transaction from the California sales tax if the delivery of goods to the carrier takes place out-of-state, even though the carrier takes possession of the goods in the state to transport them out-of-state."

Delta, then, occupies a dual role of purchaser and transporting carrier with an exemption, pursuant to the Law. Its vendors of fuel, assured by the bill of lading and exemption certificate provided them by Delta, sell Delta the partially tax-exempt fuel and do not remit sales tax on the tax-exempt portion to the state. They only remit amounts based on Delta's estimate of what the taxable portion of the fuel purchase is to be; it is difficult to imagine what incentive there would be for the vendors to pursue refund of overpaid tax under such circumstances.

Plaintiff Delta, defending its right to sue, points to section 6421. It provides, in subdivision (a), that "[i]f a purchaser certifies in writing to a seller that the property purchased will be used in a manner or for a purpose entitling the seller to regard the gross receipts from the sale as exempted by this chapter from the computation of the amount of the sales tax, and uses the property in some other manner or for some other purpose, the purchaser shall be liable for payment of sales tax *as if he were a retailer making a retail sale of the property at the time of such use,* and the cost of the property to him shall be deemed the gross receipts from such retail sale. The certificate shall relieve the seller from liability for the sales tax only if it is taken in good faith." (Italics added.) Thus, in the circumstance of *underpayment* of taxes pursuant to an exemption certificate, the Legislature has seen fit to treat plaintiffs such as Delta as retailers, rather than purchasers. The Board, of course, in exercising its audit powers, regards plaintiffs such as Delta appropriate subjects of audit; it seems only fair that if one may lawfully be

audited by the Board, some recourse be permitted to litigate the claim that the audit is unfair.

Section 6901 provides, in pertinent part, that "[a]ny overpayment of the use tax by a purchaser to a retailer who is required to collect the tax and who gives the purchaser a receipt therefor pursuant to Article 1 [commencing with section 6201] of Chapter 3 shall be credited or refunded by the state to the purchaser." It seems clear that the Legislature, as well as the courts, has a continuing concern that the Board is not unjustly enriched at the expense of purchasers left without a remedy.

We note also that with respect to refunds, section 6901 et seq. provides the procedures for exhaustion of administrative remedies by "persons," rather than "taxpayers." (See also, § 6933, providing for a judicial remedy by an unsuccessful "claimant," rather than a "taxpayer," in the superior court.)

We conclude that the Board's argument that plaintiff Delta has no standing to sue for refund under the circumstances presented here cannot prevail. The Law regards common carriers such as Delta as retailers as well as purchasers, for the purpose of computing the parameters of the exemption which is afforded to common carriers. The Board audits Delta to ensure that the exemption is being utilized properly and lawfully. In a dispute over the correctness of the audit procedure to monitor proper and lawful use of the exemption afforded by law, it would be irrational to hold that Delta has no standing to contest a determination of substantial funds due for which Delta was legally responsible. To hold otherwise might permit unjust enrichment of the Board. Delta is clearly the real party in interest here, has paid the disputed tax due (which concededly could not have been collected from its vendors), and has standing to pursue the action for refund. We so hold.

SCOPE OF REVIEW

II.

■ The Board contends that Delta, in defense of the judgment awarded it by the superior court, has raised issues on appeal which were not raised at the administrative level or in the superior court. The Board specifically argues that Delta has challenged the audit procedure but is precluded from challenging the validity of Regulation 1621.

Section 6904 provides, with respect to claims for refund made to the Board, that "[e]very claim shall be in writing and shall state the specific

grounds upon which the claim is founded." Section 6933 provides, with respect to claims for refund denied by the Board and for which judicial review is sought, that "the claimant may bring an action against the board on the grounds set forth in the claim. . . ."

The question is whether plaintiff Delta adequately apprised the Board of the issues involved in its claim for relief, by characterizing the audit procedure employed by the Board as unfair. Throughout this litigation, the Board has justified its change in audit procedure by relying on Regulation 1621, as amended; in our view, the Board itself has placed at issue the validity of its own regulation.

An examination of the "Decision and Recommendations" of Hearing Officer Wengel, dated February 25, 1982, and included in the record on appeal, leads to the conclusion that there was no doubt at any time during this litigation that Regulation 1621 was being challenged by Delta. Defense of Regulation 1621 was the rationale upon which the decision of the administrative hearing officer was based. The decision declared as follows: "The facts show that the petitioner issued exemption certificates for sales tax on their purchases of jet fuel and paid tax only on the amount of fuel they estimated they would use during the flights out of California. During 1978, the petitioner was generally paying tax on more fuel than was necessary as the petitioner had overestimated the amount of fuel needed to get out of California. This error was not discovered until December 1978.

"Regulation 1621(d)(1) gives the petitioner the right to correct a bill of lading within 30 days after the delivery of the fuel or within 10 days after the end of the voyage. This is the only remedy available to the petitioner as the bill of lading is the contract which supports the claimed exemption. If the bill of lading does not accurately reflect the amount of fuel subject to tax, the petitioner had that information available and could have corrected the bill of lading within the stated time period. To allow the petitioner more time would be to allow the terms of the contract to be altered perhaps years after the transaction. This would defeat the necessity for *timely* bills of lading." (Italics in text.)

We conclude that the issues with respect to Regulation 1621 raised by plaintiff Delta are cognizable on appeal; there is no rigid requirement that certain precise terms be restated throughout litigation to ensure that an issue is not lost. Those issues which logically are presented by an underlying claim may be addressed by a reviewing court. (See *Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60, 66, fn. 2 [219 Cal.Rptr. 142, 707 P.2d 204].)

## III.

## REGULATION 1621

■ We address the remainder of the contentions of the parties. Implicit in the Board's contentions concerning the validity of Regulation 1621 is that following the procedure set forth in the regulation is the *only* way in which Delta could have recovered the sums involved in its overestimate and the overpayment of the tax. Delta has pointed out that section 6483 permits the Board to offset overpayments against underpayments. That section provides, in pertinent part, that "the Board *may* offset. . ." (Italics added.) The language used does not impose offsetting as a mandatory responsibility of the Board; thus section 6483 cannot be employed by Delta as a springboard for the argument that Regulation 1621 is not exclusive in effect.

The Board has been given rulemaking power by the Legislature. (§ 7051.) Regulation 1621 (Cal. Admin. Notice Register (now Cal. Reg. Notice Register), tit. 18, Register 77, No. 48 (Nov. 26, 1977) p. 495 et seq.) provided, at the time material to this dispute, as follows: "(d) Proof of Exemption

"(1) Bill of Lading. Any seller claiming a transaction as exempt from sales tax under section 6385 must receive at the time of the transaction, and retain, a properly executed bill of lading, or copy thereof, pursuant to which the goods are shipped. The bill of lading must show the seller as consignor. It must indicate that the described goods are consigned to the common carrier at a specified destination outside this state. . . . In regard to sales of fuel and fuel oil the bill of lading will be considered received at the "time of the transaction" only if a copy of the original bill of lading is received by the vendor within 30 calendar days of delivery of the fuel or fuel oil to the carrier, *and any corrected bill of lading is received by the vendor within 45 calendar days after the date of delivery of the fuel or fuel oil . . . .*" (Italics added.)

As was explained in *Lindeleaf* v. *Agricultural Labor Relations Bd.* (1982) 41 Cal.3d 861 at page 871 [226 Cal.Rptr. 119, 718 P.2d 106], while this court has the power of independent review, "[appellate] review of administrative regulations is in any case limited: as long as the regulations are 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, § 11342.2) we will defer to the agency's expertise. Our inquiry is thus 'freighted with the strong presumption of regularity accorded administrative rules and regulations.' [Citations.]"

Regulation 1621 appears to have a clear purpose: to facilitate the collection of sales taxes imposed pursuant to the Law by the Board. The Board

desired to tighten its collection procedures to keep payment of tax as current as possible.

The regulation sets forth with some particularity what is required to claim the exemption bestowed by section 6385, and does not appear to be unreasonable. As it read at the time of this dispute, it put air carriers such as Delta on notice that the procedure for claiming the exemption was being changed. The "corrected" bill of lading could only reasonably have been interpreted to require report of *actual* as opposed to *estimated* consumption of fuel on the out-of-state flights for an air carrier, *within a reasonable period of time after the flights occurred.* The relationship between the procedure and legitimate objectives of the Board is evident.

Concededly, Delta was informed of the regulation. It cannot now say that the full import of the regulation was unclear. Nor was any evidence presented below suggesting that application of the regulation to Delta or any other air carrier would be unreasonably burdensome on the carriers for technical reasons.

Since we hold that Regulation 1621 as amended is valid, Delta's primary claim that the audit was unfair is without merit. To permit the "offsetting" which had been previously allowed in the audits would have defeated the purpose of the regulation, and would have permitted Delta to avoid the regulatory effect. Nor do we perceive any inaccuracy or unfairness in the manner by which overestimates and underestimates were determined statistically. (See *Paine* v. *State Bd. of Equalization* (1982) 137 Cal.App.3d 438 [187 Cal.Rptr. 47].)

The regulation was effective in 1977. The Board auditors only applied it to that portion of the "Audit Period" which occurred in 1978, the nine months which elapsed from January to September. While we do not know the basis for the additional assessments made by the Board with respect to the "Audit Period" the amounts involved suggest that in the past there has been considerable delay in the Board's receipt of taxes due it from common carriers pursuant to the Law.

### DISPOSITION

The judgment permitting refund to Delta is reversed.

Plaintiff to bear its own cost on appeal.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied October 26, 1989.