[No. A059880. First Dist., Div. Three. Mar. 30, 1994.]

LYKES BROS. STEAMSHIP CO., INC., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Bertram C. Izant for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Jack Newman, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**MERRILL, J.**—On July 5, 1989, plaintiff Lykes Bros. Steamship Co., Inc. (Lykes), filed this action against the State Board of Equalization (Board), to recover $32,076 in sales and use taxes paid under protest, plus interest thereon from date of payment. Trial was by the court, sitting without a jury. Following Lykes's presentation of evidence, the Board filed a motion for judgment pursuant to Code of Civil Procedure section 631.8.[1] The motion was granted and Lykes appeals. We affirm.

I

Before addressing the issues at hand, some background information is in order. Lykes is a steamship company with worldwide common carrier

---

[1]Code of Civil Procedure section 631.8 provides in part: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment."

operations. Fuel purchased in California by Lykes and other common carriers in conjunction with their business of interstate and/or international transportation, is subject to limited taxation by the State of California. Fuel used by a common carrier to reach its first out-of-state destination is subject to the state sales tax; the remainder, used for transportation elsewhere, is exempt. To qualify for this exemption, carriers must submit to their fuel vendors a bill of lading and an exemption certificate stating the quantity of fuel and petroleum products claimed as exempt. (Rev. & Tax. Code, § 6385.)[2] The procedure for obtaining this exemption is set forth in Board Sales and Use Tax Regulations, regulation 1621. (Cal. Code Regs., tit. 18, § 1621; hereafter regulation 1621.)

In November 1977 the Board, apparently responding to a problem of untimeliness on the part of some carriers in submitting their exemption-related paperwork, amended Sales and Use Tax regulation 1621(d)(1) to read, in pertinent part: "(1) Bill of Lading. Any seller claiming a transaction as exempt from sales tax under section 6385 must receive at the time of the transaction, and retain, a properly executed bill of lading, or copy thereof, pursuant to which the goods are shipped. The bill of lading must show the seller as consignor. It must indicate that the described goods are consigned to the common carrier at a specified destination outside this state. . . . [¶] In regard to sales of fuel and fuel oil the bill of lading will be considered received at the 'time of the transaction' only if a copy of the original bill of lading is received by the vendor within 30 calendar days of delivery of the fuel or fuel oil to the carrier, *and any corrected bill of lading is received by the vendor within 45 calendar days after the date of the delivery of the fuel or fuel oil, or, where the fuel is used in a vessel, within 10 calendar days after the end of the voyage, whichever is later.*" (Cal. Admin. Notice Register [now Cal. Reg. Notice Register], tit. 18, Register 77, No. 48 (Nov. 26, 1977) p. 495 et seq., italics added).[3]

The event giving rise to the instant lawsuit was an audit of Lykes's records for the period of January 1, 1979, to June 30, 1984. As part of the audit, the Board analyzed exemption figures for approximately 20 voyages made by Lykes to the Far East during this period. The Board found that Lykes's figures for the amount of fuel it consumed in reaching its first out-of-state destination, were correct in "35 percent of the cases"; were "overestimated in 35 percent" of the cases (meaning Lykes overpaid sales taxes); and were "underestimated in 30 percent" of the cases (meaning that

---

[2]All further statutory references are to the Revenue and Taxation Code.

[3]Regulation 1621(d)(1) has since been further amended. However, all references herein are to the version of the regulation which became effective November 26, 1977.

Lykes had underpaid sales taxes). The Board determined that Lykes owed $32,076 in back sales taxes based on the voyages for which Lykes underestimated fuel-usage figures. The Board ruled that if a purchaser consumes more fuel to reach its first out-of-state destination than initially estimated and reported, the purchaser is liable for sales tax on the extra fuel used. Additionally, the Board would not permit Lykes to offset the underpaid tax amount with the overpaid tax amount for the same period. The Board maintained that Lykes was not entitled to such an offset since it failed to send corrected bills of lading to its vendors within the time limits set forth in regulation 1621.

On June 6, 1985, the Board sent Lykes a notice of determination indicating it owed $160,562 in back sales taxes, interest and penalties. Included in the bill was the $32,076 amount based on underestimated fuel-usage figures. Lykes apparently paid the Board $149,659.11 under protest. It then filed a claim for refund with the Board for this amount. The refund was granted with the exception of the $32,076 assessment for underestimated fuel-usage figures, plus interest.

Thereafter, Lykes filed the instant lawsuit. At trial and on appeal, Lykes has abandoned its claim that the underpaid taxes during this period should be offset by the overpaid taxes. Lykes concedes the Board's point that it has waived any right of offset due to its failure to submit corrected bills of lading. Rather, Lykes's position on appeal can be summarized as follows: that the use of good faith estimates of fuel consumption needed to reach the first out-of-state port was a permitted method of determining any sales tax liability; that it was a long-standing practice in the industry to submit estimates of fuel usage versus actual usage figures; and that up until 1985, the Board's policy was to accept estimates notwithstanding regulation 1621(d)(1).

Lykes points out that nowhere in regulation 1621(d)(1), itself, is it specifically stated that good faith estimates are improper or that corrected bills of lading must be filed in all cases where estimates are used. Moreover, it argues, during the audit period the Board issued tax bulletins and letters on the subject of regulation 1621(d)(1), wherein it specifically approved of the use of estimates. In support of this claim, Lykes points to a tax bulletin and several letters from the Board which contain the following statement: "In addition to a bill of lading, the seller of fuel or fuel oil must obtain from the purchaser at the time of the transaction, and retain, a certificate conforming in substance with that shown in Regulation 1621 as Certificate A, 'California

Sales Tax Combined Bill of Lading and Supporting Exemption Certificate.' All quantities called for in the [supporting exemption] certificate must be shown thereon and must be *actual amounts or estimates* reflecting as closely as possible the anticipated time and distance factors involved." (Italics added.)

In response to Lykes's argument, the Board denies that it accepted good faith estimates in place of actual figures during the audit period and argues that the language of regulation 1621(d)(1), itself, makes it clear that actual figures are required. The regulation provides that "[t]he sales tax applies with respect to sales of fuel which will be consumed in a voyage . . . from the California point where the fuel is taken on, to the first destination outside of California." Thus Lykes incurred tax liability for any fuel actually used before reaching the first out-of-state port on each voyage.

The trial court found that Lykes failed to prove that the Board permitted or approved a practice of using good faith estimates during the period in question to determine the amount of tax actually due. In entering judgment in favor of the Board, it reasoned: ". . . Revenue and Tax Code section 6385 and Regulation 1621 require a tax to be paid on fuel consumed. No provision speaks of tax liability being based on estimates. The use of estimates initially serves the purpose of reimbursing the seller for sales tax at the time of the transaction. Filing corrected exemption certificates allows the procedure which sees to it that only the proper amount of tax is paid by everyone. To interpret the law otherwise would allow one to consciously or consistently in good faith underestimate fuel consumption and consequently pay less sales tax than others who do correct their figures to actual consumption."

II

On appeal, Lykes contends that the trial court's findings are erroneous and unsupported by the record. We disagree.

The question of whether regulation 1621 calls for actual fuel-usage figures in place of estimates, was addressed in *Delta Air Lines, Inc.* v. *State Bd. of Equalization* (1989) 214 Cal.App.3d 518 [262 Cal.Rptr. 803]. That case arose, as here, out of an audit of fuel-usage figures submitted for purposes of the sales tax exemption under section 6385. Like Lykes, Delta Air Lines (Delta) had provided fuel vendors in California with bills of lading and exemption certificates based on "estimated consumption of fuel." (214

Cal.App.3d at p. 521.) Delta successfully claimed at the trial court level that the use of estimates regarding fuel consumption is proper. The trial court granted a judgment in favor of Delta and the Board appealed.

The appellate court reversed the trial court's decision in light of regulation 1621(d)(1). It said, "Regulation 1621 appears to have a clear purpose: to facilitate the collection of sales taxes imposed pursuant to the [Sales and Use Tax Law] by the Board. The Board desired to tighten its collection procedures to keep payment of tax as current as possible. [¶] . . . The 'corrected' bill of lading could only reasonably have been interpreted to require report of *actual* as opposed to *estimated* consumption of fuel on the out-of-state flights for an air carrier, *within a reasonable period of time after the flights occurred.* The relationship between the procedure and legitimate objectives of the Board is evident." (*Delta Air Lines, Inc.* v. *State Bd. of Equalization, supra,* 214 Cal.App.3d at pp. 530-531.)

We agree with this interpretation of the subject regulation. By its terms, it is clear that the regulation contemplates the use of actual versus estimated fuel-usage figures for a determination of the tax liability. Regulation 1621(d)(1) makes extensive provision for the submission of corrected bills of lading. This includes the circumstance of corrected calculations representing the amount of fuel *actually* used by the carrier to reach its first out-of-state destination.

Lykes endeavors to distinguish the instant case from *Delta Air Lines* on the grounds that here there were instructions from the Board regarding the implementation of regulation 1621(d)(1) and "[t]hose instructions clearly advised the steamship companies that estimates could continue to be used for determination of liability for sales tax reimbursement so long as the timeliness requirements . . . were followed." Lykes's argument is unpersuasive. From the fact that certain communications issued by the Board stated that fuel-usage figures "must be actual amounts or estimates," it does not follow that estimates were sufficient to establish the amount of tax due in the final analysis. As Robert Nunes, the Board's deputy director for sales tax, explained at trial, regulation 1621(d)(1) was drafted in such a way as to allow common carriers to use good faith estimates "to begin with" and to provide them with adequate time in which to submit corrected bills of lading. The position of the Board is that in order to qualify for an exemption under section 6385 the carrier, through its vendor, must submit a bill of lading which is complete and timely and which reflects the actual fuel consumed. The evidence supports this determination by the Board, and the trial court

was correct in finding that section 6385 and regulation 1621 require that the tax be paid on fuel actually consumed by a carrier to reach its first out-of-state destination.

Judgment is affirmed.

White, P. J., and Werdegar, J., concurred.