[No. H023064. Sixth Dist. Jan. 31, 2003.]

APPLE COMPUTER, INC., Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA ASSESSMENT APPEALS BOARD,
Defendant and Appellant;
LAWRENCE E. STONE, as County Assessor, etc., Real Party in Interest.

1356

**COUNSEL**

Pillsbury Winthrop, Lawrence L. Hoenig and Richard Edward Nielsen for Plaintiff and Appellant.

Ann Miller Ravel, County Counsel, Debra Cauble, Assistant County Counsel, Jeffrey L. Bryson, Larry A. Kubo, and James J. Rees, Deputy County Counsel, for Defendant and Appellant.

Ann Miller Ravel, County Counsel, James J. Rees and Marcy J. Berkman, Deputy County Counsel, for Real Party in Interest.

## OPINION

**PREMO, J.**—Plaintiff Apple Computer, Inc. (Apple), claiming that it overpaid approximately $2.75 million in property taxes for the 1994 through 1996 tax years, petitioned for a writ of mandamus against defendants Santa Clara County Assessor Lawrence E. Stone (Assessor) and the County Assessment Appeals Board (Board). The trial court ordered the Assessor to complete an audit for those years and the Board to set aside its findings and conclusions determining that it had no jurisdiction over Apple's February 1999 applications for a changed assessment. Apple appeals the order to complete the audit and the court's refusal to order the Board to take jurisdiction over the applications and grant Apple a hearing. The Board and the Assessor cross-appealed, the Board claiming that the court erred in ordering it to set aside its findings and conclusions and the Assessor claiming that the trial court used an erroneous standard of review in ordering him to complete the audit. They claim that previous actions of the Board equalized Apple's taxes for those years and pursuant to Revenue and Taxation Code sections 469 and 1605, subdivision (e) (hereafter section 1605(e)),[1] those years may not be revisited.

## FACTS

In each of the tax years 1993-1994, 1994-1995, 1995-1996, and 1996-1997, Apple filed "Application for Reduced Assessment" for reductions in the assessed valuations of its personal and real property during the annual filing period for challenging the valuations. (§ 1603.) Apple had approximately 20 business locations in Santa Clara County and filed an application for each. Apple's tax director Terry Ryan stated these applications were "protective appeals" which were necessary to protect the taxpayer's right to get a refund in the event of an overpayment.

Applications for reduced assessment are filed on a form provided by the Board. The form requires certain information and no other. There are two boxes labeled "VALUES." In the top box, column 10 requires the applicant to list the tax bill's statement of value for each category of property (for example, "Land," "Improv/Structures Real Property, Improv/Structures Business Div.," "Improvement Fixtures," "Personal Property," "Exemption," "Total"). In column 11, the applicant must give its opinion of value for the

---

[1] Further statutory references are to the Revenue and Taxation Code unless otherwise stated.

same categories. Ryan stated there is no way for the taxpayer to identify in column 10 specific pieces of disputed property or the issues regarding them.

Apple's column 11 values were half the assessor's. Ryan explained that because the forms require the taxpayer to state an opinion of value only for the same broad categories as appear on the tax bill, "[t]hat's why we take a percentage, 50 percent, because you can't get any more detailed than that." If there is a tax bill value in column 10, column 11 may not be left blank. The form warns, "INCOMPLETE APPLICATIONS WILL NOT BE AC-CEPTED."

The bottom "VALUES" box is "for county use only." Column 13 is for the county to verify the assessment, and column 14 states the "Value adjusted by Board's Action."

In January 1996, Apple, the Assessor, and county counsel entered into a stipulation for the 1994, 1995, and 1996 tax years, setting out a methodology hammered out after an audit and appeals of the 1989 to 1992 tax years for valuing portions of Apple's property. In the 1996 stipulation, the parties agreed to use the methodology for determining the value of "production equipment, purchased computer equipment, and computer equipment manu-factured by Apple Computer, Inc., and removed from inventory for their [sic] own use." The stipulation stated that "the amounts entered on the current Secured/Unsecured Roll for the parcel(s) set forth below may be adjusted as indicated on the attachment(s)." There were three pages reciting the terms of the agreement contained in the stipulation and 28 pages of attachments. The third page of the agreement concluded, "[a]n audit has been completed with respect to the 1993/94 tax year. The Assessor reserves the right to verify, and adjust if necessary, the reported costs on Apple's Business Property Statements, Form 571-L, for the years 1994/95 and 1995/96, but would not deviate from the agreed methodology in calculating value. The Applicant reserves the right to appeal any escape assessments resulting from such audits."

The parties stated that in valuing the property specified above, they would apply "the economic lives, Iowa State Curves, appropriate Bureau of Eco-nomic Analysis (BEA) Computer Price Decline Indexes, income decline factors, Friedman Formula, and Weighted Average Cost of Capital (WACC) methodology as determined by the Santa Clara County Assessment Appeals Board for these same categories of assets for the four tax years immediately preceding the 1993/94 tax year. The criteria for the 1993/94, 1994/95, and 1995/96 tax years is as follows: . . . ." Two pages of single-spaced criteria followed.

The 28-page attachment following the three pages of agreement contains "from" and "to" cash values. The only changed "to" numbers appear for the category "personal property" and most are a reduction from the "from" number. The effect of the attachment was to reduce the assessed value of the stated types of Apple's personal property in Santa Clara for the three tax years.

The application for reduced assessment for the next year, 1996-1997, was heard by the Board on August 13, 1997. The parties contested lifing, trending, and depreciation tables for four categories of property: machinery and equipment, office furniture and fixtures, leaseholds, and mid-range computers valued from $25,001 to $500,000. The Board issued written findings and conclusions in November 1997. The assessments on all contested categories of property were sustained except for a reduction of $1,788,906 for mid-range computers.

That same month, August 1997, the Assessor initiated a property tax audit of Apple's personal property for the four fiscal years from 1994-1995 through 1997-1998 as required by section 469. That section then provided for audits every four years of businesses "with a full value of $300,000 or more." If the assessor's findings would alter the previous assessment, section 469 requires the assessor to provide those findings in writing to the taxpayer. The assessor must notify the taxpayer of an overassessment and the fact that a claim for refund may be filed with the county. If an audit discloses property subject to an escape assessment, the rest of the property of the taxpayer may be reviewed and, if not previously equalized, may be equalized.[2]

---

[2]Section 469 (as amended by Stats. 2000, ch. 613, § 1) provides: "(a) In any case in which locally assessable trade fixtures and business tangible personal property owned, claimed, possessed, or controlled by a taxpayer engaged in a profession, trade, or business has a full value of four hundred thousand dollars ($400,000) or more, the assessor shall audit the books and records of that . . . business at least once each four years. [¶] . . . [¶] (1) Upon completion of an audit of the taxpayer's books and records, the taxpayer shall be given the assessor's findings in writing with respect to data that would alter any previously enrolled assessment. [¶] (2) Equalization of the property by a county . . . assessment appeals board . . . shall not preclude a subsequent audit and shall not preclude the assessor from levying an escape assessment . . . but shall preclude an escape assessment being levied on that portion of the assessment that was the subject of the equalization hearing. [¶] (3) If the result of an audit for any year discloses property subject to an escape assessment, then the original assessment of all property of the assessee at the location of the . . . business for that year shall be subject to review, equalization and adjustment by the county . . . assessment appeals board . . . except in those instances when the property had previously been equalized for the year in question. [¶] (4) If the audit for any particular tax year discloses that the property of the taxpayer was incorrectly valued or misclassified for any cause, to the extent that this error caused the property to be assessed at a higher value than the assessor would

The auditor requested documents for all four tax years at the start of the audit, but ultimately issued a "Notice of Proposed Escape Assessment" for the 1997-1998 tax year only. ██ Property that has "escaped" assessment was underassessed, not assessed at all, or was incorrectly valued, misclassified, etc., resulting in an under- or overassessment. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1127 [51 Cal.Rptr.2d 251, 912 P.2d 1198].) When Apple told the auditor that if the methodology agreed in the stipulation was applied to 1994, 1995, and 1996, those values would change also and Apple would be entitled to a refund, the auditor refused to audit the first three years. The auditor, and ultimately, the Assessor, notified Apple that the "1994 and 1995 value issues were settled through Board approved stipulations. The issues for 1996 were presented to the Appeals Board and their decision has been finalized. Therefore, the years 1994, 1995, and 1996 are closed."

Also in August 1998, Apple filed a request for a refund of taxes paid in the 1994 through 1996 tax years with the county board of supervisors. The board of supervisors passed on the refund request to defendant Board and defendant Board assigned application numbers to it. The clerk of the Board then closed the "applications" as duplicative of prior applications or because they had been settled by an earlier stipulation.

Apple filed another set of applications in February 1999. These are the subject of the instant action. When the clerk of the Board notified Apple that it had also closed the February 1999 applications due to prior equalization of the 1994-1996 tax years, Apple requested a jurisdictional hearing before the Board. The Board determined it did not have jurisdiction over the applications stating again that it had already equalized Apple's tax assessment.

On December 21, 1999, Apple filed a petition for a writ of mandamus and a complaint for refund of property taxes. The latter was dismissed after a successful demurrer. The petition claimed that the August 1997 audit disclosed personal property subject to escape assessment in all four years, that

---

have entered on the roll had the incorrect valuation or misclassification not occurred, then the assessor shall notify the taxpayer of the amount of the excess valuation or misclassification, and the fact that a claim for cancellation or refund may be filed with the county as provided by Sections 4986 and 5096."

Section 1605(e) states in pertinent part, "If an audit [pursuant to section 469] of the books and records of any . . . business . . . discloses property subject to an escaped assessment for any year, then the original assessment of all property of the assessee at the location of the . . . business for that year shall be subject to review, equalization and adjustment by the county . . . assessment appeals board . . . except in those instances when the property had previously been equalized for the year in question by the county . . . assessment appeals board." "Equalization" means "adjusting the value of property assessed to conform to its real value." (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 663 [108 Cal.Rptr. 434].)

the original assessments had overvalued certain assets for each of the tax years, and that Apple had been overassessed taxes for each of the years in issue. The petition claimed that when Apple notified the auditor that the property was overassessed, the auditor stopped the audit for those years and finished the audit for 1997-1998 only. Apple also alleged that the Assessor concurrently performed an audit of Apple for the Orange County Assessor under the "California Counties Cooperative Audit Services Exchange." Apple had overreported computers for the March 1, 1996, lien date in both Santa Clara and Orange counties. The Santa Clara County Auditor refused to send the Orange County Assessor any information for the March 1, 1996, lien date. Apple, itself, ultimately forwarded that information to the Orange County Assessor, who enrolled a negative escape assessment and granted Apple a refund for the March 1, 1996, lien date, as well as a positive escape assessment for the January 1, 1997, lien date.

Apple requested the court to order: (1) the Board to hold hearings to determine the value of Apple's property and to equalize and adjust the assessed values for the 1994-1995, 1995-1996, and 1996-1997 tax years; (2) the Assessor to issue findings with respect to data that would alter any previously enrolled assessment for the tax years in question and to notify Apple with respect to any excess valuation and the right to obtain a refund; (3) the county to refund to Apple property taxes totaling $2,745,691 for the three years, or such amounts as found when the assessments for those years were correctly adjusted; and (4) the Board to pay Apple's attorney fees.

In the trial court and in this court, the Assessor took the position that "[i]n filing these Original Applications, Apple challenged each and every portion of its assessed value. . . . [T]hese Applications challenged the assessed value of all Apple's fixtures, all Apple's structures, and all Apple's personal property. . ." (original underscoring) at every business location where Apple had personal property in Santa Clara County and the valuation of its real property at Infinite Loop in Cupertino. The Assessor pointed to Apple's statement in the applications that it was raising not only the various issues it expressly enumerated in the applications, but was also challenging "all other factors and assumptions used in determining the value of the property in question." Accordingly, notwithstanding the limitation in the stipulation, the Assessor and the Board asserted the stipulation covered the value of all of Apple's property for those tax years.

As for the 1996-1997 tax year, defendants asserted that the tax on leasehold improvements, office furniture and equipment, mid-range computers, and machines and equipment was equalized after the August 13, 1997, evidentiary hearing. Therefore, when Apple insisted the auditor should audit

each of the four years, the Board maintained that it was forbidden by sections 469 and 1605(e) from granting Apple another equalization hearing for those years.

Apple's position was that only portions of the 1994 through 1996 assessments were equalized and that the stipulation contemplated that the 1994-1995 and 1995-1996 tax years would be audited.

The trial court issued a statement of decision finding that the Assessor "had a statutory, ministerial duty to audit each of the four years in question. [The Assessor's] discretion to audit a 'test' year is circumscribed by the requirements of Property Tax Rule [the court's shorthand for title 18 California Code of Regulations and a designation which we shall use in the text] 193 and that rule does not allow the assessor to forego [sic] audits for fiscal years which the assessor has unilaterally determined had previously been equalized. To find otherwise would render the language of . . . section 469 nugatory. That statute expressly states that '[e]qualization of . . . property . . . shall not preclude a subsequent audit and shall not preclude the assessor from levying an escape assessment in appropriate instances[.]' (Revenue & Taxation Code § 469.)"

The court found that the stipulation "did not operate to 'equalize' fiscal years 1994 and 1995. The express language of the Stipulation indicates that the parties contemplated audits for these two fiscal years, with Respondent Assessor reserving 'the right to verify, and adjust if necessary, the reported costs . . .' and Petitioner Apple reserving 'the right to appeal any escape assessments resulting from such audits.' . . . The subject matter of the Stipulation was the methodology to be used in calculating the value of specified categories of assets and Respondent [Board]'s approval of the Stipulation was an approval of the methodology, not an equalization."

The court found that the August 13, 1997, evidentiary hearing before the Board "involved contested valuations of machinery [and] equipment (including telecommunication and electronic test equipment), office furniture [and] equipment, leasehold improvements (real and personal) and mid-range computers . . . . Accordingly, those are the only categories of property which were equalized by [the Board] as a consequence of its Findings and Conclusions Dated November 1997 . . . . There could be no equalization of other categories of property which were not at issue in those proceedings. [¶] Accordingly, [the Board]'s Findings, Conclusions and Determination Dated August 1999 . . . are without foundation and must be set aside."

However, the court found Apple's February 1999 applications were "premature, as Respondent Assessor has yet to complete its audit of fiscal years

1994, 1995 and 1996. Once that audit is complete and the necessary findings and notices are issued by Respondent Assessor, Petitioner Apple may file the appropriate applications before [the Board]."

The trial court denied Apple's request to order the Board to take jurisdiction over Apple's 1994-1995, 1995-1996, and 1996-1997 applications and ordered the parties to bear their own costs and fees. None of the parties was satisfied by these orders. These appeals ensued.

## ISSUES ON APPEAL

Apple contends that the trial court erred (1) in ordering the Assessor to issue findings and the notice mandated by law after completing the audit rather than forthwith and (2) in finding Apple's applications premature and refusing to direct the Board to take jurisdiction of Apple's applications and grant it a hearing. Finally, Apple contends the statute of limitations for assessments "precludes the superior court's conclusion that Apple's applications were premature and that respondent assessor needs to complete the audit."

The Board cross-appeals the trial court's order setting aside the Board's findings and conclusions from the jurisdictional hearing on Apple's February 1999 applications, and the Assessor appeals the order directing him to complete the audit for 1994 through 1996.

## STANDARD OF REVIEW

■ When a ruling of the trial court is based upon its interpretation of statutory law and regulations and the facts developed before the Board, "[w]e independently construe statutory law [and administrative rules and regulations (*Delta Air Lines, Inc. v. State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803])], as [their] interpretation is a question of law on which we are not bound by the trial court's analysis." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1502 [82 Cal.Rptr.2d 368].) However, where extrinsic evidence has been admitted as an aid to the interpretation of an agreement, a reasonable construction of the agreement by the trier of fact, which is supported by substantial evidence, will be upheld. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746 [131 Cal.Rptr. 873, 552 P.2d 1169].) ■ An assessment appeals board, although established by county ordinance, derives its power from California Constitution, article XIII, former section 9.5 (now § 16) and is a constitutional agency. (*Hunt-Wesson Foods, Inc. v. County of Alameda* (1974) 41 Cal.App.3d 163, 176 [116 Cal.Rptr. 160].) "In performing its adjudicative function pursuant

to the grant of power from the Constitution, the factual determinations of a board of assessment appeals are 'entitled to all the deference and respect due a judicial decision.' [Citation.]" (*Ibid.*) Under Code of Civil Procedure section 1085, the court can only review the administrative record, giving proper deference to the administrative decision. (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785 [52 Cal.Rptr.2d 466].)

COMPLETION OF THE AUDIT

██ Apple contends that the court erred in ordering the Assessor to complete the audit before issuing the statutorily mandated findings and notices. Apple claims the Assessor already had sufficient information to make the findings and notices without further audit efforts. Apple states that it "advised the superior court that its holding regarding completion of the audit—which apparently was the basis underlying the court's finding that Apple's Applications were premature—implicated the applicability of the statute of limitations for escape assessments which had expired for all three years at issue by the time the superior court entered its judgment." Apple explains that the "Assessor would probably have to perform some additional calculations" in order to make the determinations required by section 469. "However, it does not entail completion of the audit in the sense of a further review of records, which review otherwise had been concluded by Respondent Assessor years ago."

Where the assessor, in conducting an audit under section 469 and property tax rule 193, finds a "discrepancy or irregularity" in the "fiscal year first selected for audit, the assessor shall audit the remaining fiscal years for which the statute of limitations has not run unless the documents in the audit report his conclusion both (1) that the discrepancy or irregularity in the fiscal year first selected is peculiar to that fiscal year and (2) that the discrepancy or irregularity did not permit the assessment of an escape under the provisions of sections 502, 503, 531.3 or 531.4 of the Revenue and Taxation Code." (Cal. Code Regs., tit. 18, § 193.)

The record supports the trial court's finding that the Assessor's audit narrative did "not state that the 'discrepancy or irregularity did not permit the assessment of an escape under the provisions of section 502, 503, 531.3 or 531.4 of the Revenue and Taxation Code' " as required by property tax rule 193(a). The conclusion in the audit narrative stated, "[t]he years 1994 through 1996 were appealed and settled. . . ." and a "Note By GH," the chief auditor-appraiser and the auditor's supervisor, which was handwritten on the audit narrative, added, "1996 was heard by the Appeals Board." These

comments are not a sufficient substitute for the statement required by the statute. They do not inevitably lead to the conclusion required by property tax rule 193(a) that the "discrepancy or irregularity did not permit the assessment of an escape under the provisions of sections 502, 503, 531.3 or 531.4 of the Revenue and Taxation Code." Consequently, we agree with the trial court that the Assessor "had a statutory, ministerial duty to audit each of the four years in question" and his "discretion to audit a 'test' year is circumscribed by the requirements of Property Tax Rule 193." The assessor may not forego audits for fiscal years which the assessor has unilaterally determined had previously been equalized.

Next, the trial court found that the 1996 stipulation was an approval of the methodology to be used in calculating the value of specified categories of assets. The court also stated the Board's approval of the stipulation was an approval of the methodology and not an equalization. The record supports the finding that the stipulation was an approval of methodology but the stipulation was also an equalization of limited types of personal property.

First, the administrative record of the hearing before the Board contains only testimony about lifing, depreciation tables and other factors related to determining the cost of specific types of property. The focus is narrow and does not cover all categories of property listed in the tax bill. The parties agreed to apply "the economic lives, Iowa State Curves, appropriate Bureau of Economic Analysis (BEA) Computer Price Decline Indexes, income decline factors, Friedman Formula, and Weighted Average Cost of Capital (WACC) methodology as determined by the Santa Clara County Assessment Appeals Board for these same categories of assets for the four tax years immediately preceding the 1993/94 tax year. The criteria for the 1993/94, 1994/95, and 1995/96 tax years is as follows: . . . ." Another two pages of single-spaced criteria follow.

Second, the stipulation ends, "[e]ach of the parties waives any right of Appeal from any *reduction ordered pursuant to this stipulation.* This stipulation contains 31 pages." (Italics added.) The 28 pages of "from" and "to" cash values following the three pages of the agreement demonstrate there was an equalization of some categories of property. Comparing a sampling of the over 400 pages of original applications with the corresponding references in the stipulation establishes that the applications covered the category "personal property" at many different addresses in Santa Clara County. While the applications stated that each category of property listed on the tax bill was only worth half of the assessor's valuation, the only reduced numbers appear in the attachments to the stipulation for the category "personal property." For personal property, in most cases, the "to" number is

a reduction from the "from" number. In the application forms that we checked, the assessor's office generally made no change to the "personal property" category in the column "13. County Verified Assessment." However, the numbers in the "to" column in the stipulation are different. For example, the application for assessment No. 94-020218 shows that the total original assessed value was $32,354, Apple's opinion of value was $16,176, and the county's verified assessment remained at the original $32,354. The stipulation, however, shows the value in the "to" column to be $21,318. Based on the evidence, and the statement in the stipulation that "the amounts entered on the current Secured/Unsecured Roll for the parcel(s) set forth below *may be* adjusted as indicated on the attachment(s) . . ." (italics added), we conclude the reductions set forth in the attachments to the stipulation were an equalization.

The parties do not dispute that that reduction was an equalization; the battle is over whether defendants are right that all of Apple's property, or Apple is right that only some of its property, was equalized.

There is no support for defendants' position in the record. Substantial evidence in the transcript and exhibits submitted at the August 1997 hearing supports the finding that categories of personal property and other property not stated to be covered by the stipulation were not equalized.

Consequently we reject defendants' claim that audits for the 1994 through 1997 tax years were foreclosed by equalization of "all" of Apple's property at every business location in Santa Clara County.

ORDER TO ASSESSOR

Next, Apple contends that the trial court should have ordered the Assessor to make findings based on his previous examination of the books and records for the 1994 through 1996 tax years. Apple asserts that evidence adduced at the trial showed the effect of the 1997-1998 issues on the three earlier years and the issues and amounts of the refunds it sought. Apple allows that the Assessor would probably have to perform some additional calculations in order to accomplish one or more of these three steps, but claims these calculations do not entail completion of the audit in the sense of a further review of the records.

We disagree. Although there is evidence in the record that some or perhaps much of the work needed for an audit of the 1994 through 1996 tax years was completed, the Assessor is entitled to determine what is needed for completion of the audit. The trial court properly ordered the Assessor to finish the audit and issue findings as required by statute and regulation.

## JURISDICTION

Apple next contends that the court erred in finding Apple's applications premature and in not directing the Board to take jurisdiction of Apple's applications and grant it a hearing. Apple cites *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1334 [101 Cal.Rptr.2d 591], for the proposition that it was entitled to file applications for the first three tax years in the audit even though the Assessor had failed to comply with his statutory duties. According to Apple, section 1605(e) allows a taxpayer to seek administrative review if a section 469 audit discloses property subject to an escape assessment for any year. Apple claims the audit had disclosed property subject to escape assessment for the audit year. Apple claims that "the facts are undisputed that several of the audit adjustments in the 1997-98 tax year would have triggered corresponding escape assessment adjustments in the three earlier tax years."

Apple's argument is based on the conclusion that "the audit" disclosed property for the first three tax years subject to an escape assessment. Yet Apple strenuously urged the point that the audit for those years was never completed. The trial court agreed with this contention. Section 1605(e) allows a taxpayer to seek administrative review based on the audit's disclosure. Since there were no audit disclosures for the years in question, the court's finding that Apple's applications were premature was supported by the record.

## STATUTE OF LIMITATIONS

Finally, Apple notes that any escape assessment on personal property generally must be made within four years after July first of the assessment year. Section 532 provides that an assessment for property that has escaped taxation or was underassessed "shall be made within four years after July 1 of the assessment year in which the property escaped taxation or was underassessed." (§ 532, subd. (a).) Section 532.1 provides for agreements for extension of time. Apple claims that for 1994, the statute of limitations expired on June 30, 1998; for 1995, it expired on June 30, 1999; and for 1996, it expired on June 30, 2000. Apple concludes that the time for completing the audit and issuing notices of the kind required by section 469 is past. Apple claims it requested the court to consider equitable tolling "if only to the extent necessary to preserve Apple's rights to refunds."

This issue is premature. It was not litigated by the parties nor addressed by the court in its statement of decision. Apple states it "noted this problem to the superior court after the tentative decision was issued in January 2001 and

raised the possibility that the court consider equitable tolling, even if only to the extent necessary to preserve Apple's rights to refunds." "Noting" something to the court after the parties have presented and argued the issues identified earlier in the case is not tantamount to litigating it.

## THE BOARD'S AND ASSESSOR'S CROSS-APPEALS

The Board challenges the trial court's finding that the 1996 stipulation did not equalize Apple's property for 1994 and 1995. The Board also disagrees with the trial court's finding that the August 1997 evidentiary hearing also equalized only certain categories of property. The Board claims the trial court used the independent judgment test as the standard of review in making its decision. In addition, the Board states the court appeared to reweigh the evidence and substitute its judgment for that of the Board regarding the June 23, 1999, evidentiary hearing which confirmed the Board's decisions that the 1996 stipulation and the 1997 hearing equalized all of Apple's property. The Board claims the substantial evidence test was appropriate and that the trial court was limited to reviewing the entire record of the hearing to determine whether the Board's findings were supported by substantial evidence. The Board states that in the absence of fraud or arbitrary use of its powers, the Board is the sole judge of questions of fact and of the values of property.

■ " '[W]hile sitting as a board of equalization, the county board of supervisors is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution' [citation] with 'special expertise in property valuation.' [Citation.] In light of the semi-judicial status of local boards, 'their factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard.' [Citation.] . . . [T]he substantial evidence test . . . tolerates a very limited reweighing of the evidence heard by the local board. [Citations.] [¶] On the other hand, courts are authorized to conduct an independent reassessment 'when a board of equalization purports to decide a question of law.' [Citations.] A board's 'arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature' are legal matters subject to judicial correction. [Citations.] Finally, interpretation of statutes and administrative regulations are quintessential issues of law. [Citation.]" (*Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 979-980 [274 Cal.Rptr. 313] (*Shell Western*).)

■ In the present case, the question before the court was the correctness of the Board's determination that the 1996 stipulation and 1997 hearing amounted to previous equalizations of all of Apple's property for the 1994-1995, 1995-1996, and 1996-1997 tax years. The court relied on the express

language of the stipulation in finding that it did not equalize Apple's property for the years in question, but was an agreement on valuation methodology. We have agreed that the stipulation stated a methodology agreement, but disagreed with the trial court to the extent that we found that the stipulation equalized the categories of property that it stated were being contested. (See *ante*, at pp. 1364-1365.)

The trial court's reliance on the language of the stipulation implies that it found that the written stipulation was not ambiguous and that it was subject to the same rules of construction applied to contracts. (*Shell Western, supra*, 224 Cal.App.3d at p. 980.) " 'Whether a contract . . . is clear and unambiguous is a question of law, not of fact.' [Citations.]" (*Ibid.*) "In deciding how the stipulation should be construed when there was no conflict in the extrinsic evidence (as opposed to conflicting inferences that might be drawn from that evidence), the board purported to resolve an issue of law. [Citations.] The status of that determination is not altered even when made in the form of factual findings. [Citations.]" (*Id.* at p. 982, fn. 5.) Thus, the issue of the effect of the stipulation was a question of law for the court to review on an independent basis. There was no error.

As to the Board's decision after the August 1997 evidentiary hearing, the trial court's review was for the purpose of determining its legal effect under section 469 on Apple's property tax claim for the 1996-1997 tax year. The trial court did not concern itself with the factual correctness of the Board's findings, but considered whether the Board's jurisdictional determination about the legal effect of that hearing was correct. The trial court's statement of decision declared that the court reviewed the administrative record and exhibits admitted at the hearing and concluded that the Board equalized only the four listed four categories of property. This was a review of the Board's conclusion of law on the legal effect of its findings and conclusions issued in November 1997.

The Board's 1999 conclusion that the stipulation and the 1997 hearing equalized all of Apple's property for the tax years in question was a further legal conclusion subject to independent review by the court. As we have discussed at some length, the court did not err in setting aside the Board's findings.

As to the Assessor's cross-appeal that the trial court improperly set aside the Board's findings, conclusions and determinations from the June 23, 1999, jurisdictional hearing, as should be clear from the discussion in this opinion, we disagree with the Assessor's contention that the court was reviewing only questions of fact.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Rushing, P. J., and Wunderlich, J., concurred.