[No. C050233. Third Dist. Mar. 13, 2006.]

MARVIN LIEBLEIN, INC., et al., Plaintiffs and Appellants, v.
SANDRA SHEWRY, as Director, etc., Defendant and Respondent.

## COUNSEL

Hooper, Lundy & Bookman and Patric Hooper for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Joseph O. Egan and Paul Reynaga, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiff Marvin Lieblein (president and sole shareholder of Marvin Lieblein, Inc.), doing business as Family Pharmacy, submitted an application to defendant California Department of Health Services (the Department) for continued enrollment as a Medi-Cal pharmacy provider. The application, which Lieblein signed under penalty of perjury, stated that he had not incurred any discipline against his license. In fact, the State Board of Pharmacy had recently revoked his license, stayed the revocation, and imposed three years' probation.

When the Department discovered the facts, it denied Lieblein's application for "failure to disclose required information." The Department also notified Lieblein that his Medi-Cal provider numbers were to be deactivated and that he would be barred from reapplying to the program for three years.

Lieblein appealed to the Department's Office of Administrative Hearings and Appeals (OAHA), which denied the appeal. He then filed a petition for writ of mandate in the superior court; the court denied the petition.

Lieblein now appeals, contending: (1) The Legislature did not intend to require the Department to debar existing providers for disclosure errors, absent fraud or abuse. (2) The Department's administrative appeal procedure violated due process because it did not allow live testimony. (3) The Department failed to provide timely notice of its denial of Lieblein's application.

We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Statutory and regulatory framework*

█ Under the federal Medicaid program (42 U.S.C. § 1396 et seq.), the federal government financially assists participating states that provide medical services to eligible persons. California participates in Medicaid through the Medi-Cal program, administered by the Department. (Welf. & Inst. Code, §§ 10720 et seq., 14000 et seq.;[1] Cal. Code Regs., tit. 22, § 51000 et seq.)

To obtain reimbursement for services provided through Medi-Cal, a medical professional must enroll in the Medi-Cal program and receive a Medi-Cal "provider number." (Cal. Code Regs., tit. 22, §§ 51000.7, 51000.20.) A "provider" of Medi-Cal services is an "individual, partnership, group, association, corporation, institution, or entity . . . that provides services, goods, supplies, or merchandise, directly or indirectly, to a Medi-Cal beneficiary and that has been enrolled in the Medi-Cal program." (§ 14043.1, subd. (n).) An "applicant" is any person or entity that applies to the Department for enrollment as a provider. (§ 14043.1, subd. (b).)

█ The Department is authorized to require categories of providers to apply for continued enrollment in order to continue to participate in Medi-Cal. (§§ 14043.2, 14043.26; Cal. Code Regs., tit. 22, § 51000.55.) The Department is also authorized to adopt regulations for certifying applicants and providers. (§ 14043.15, subd. (a).)

To apply for provider status, both "applicant[s] . . . not currently enrolled in the Medi-Cal program" and "provider[s] applying for continued enrollment" (§ 14043.26, subd. (a)(1)) must follow the procedures outlined in section 14043.26. (See also Cal. Code Regs., tit. 22, §§ 51000.30, 51000.35, 51000.45, 51000.50.) Section 14043.26 repeatedly uses the expression "applicant or provider" without distinction. (§ 14043.26, subds. (c)(1), (2), (d)(1), (4)(C), (e)(1)(A), (2)(A), (C), (f)(1), (A), (2)(A), (C), (i).)

When seeking provider status, "an applicant or provider may be required to sign a provider agreement and shall disclose all information as required in federal medicaid regulations and any other information required by the [D]epartment." (§ 14043.2, subd. (a).) "The application form for enrollment,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

the provider agreement, and all attachments or changes to either, shall be signed under penalty of perjury." (§ 14043.25, subd. (a).).)

■ Among other required disclosures, "[t]he applicant or provider shall . . . state on the 'Medi-Cal Provider Disclosure Statement:' [¶] . . . [¶] . . . [w]hether the license, certificate or other approval to provide health care of the applicant or provider has been disciplined by any licensing authority[,]" and if the answer is "yes" he must provide specifics. (Cal. Code Regs., tit. 22, § 51000.35, subd. (b)(5).)[2]

"Failure to disclose the required information, or the disclosure of false information, shall result in denial of the application for enrollment or shall make the provider subject to temporary suspension from the Medi-Cal program, which shall include temporary deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program." (§ 14043.2, subd. (a); see also §§ 14043.26, subd. (d)(4)(A), 14043.28, subd. (b)(1) [deactivation of provider numbers and removal from enrollment by operation of law when application denied for failure to disclose or false disclosure].)

■ A provider may appeal from these sanctions in writing, including supporting evidence, to the Department director or the director's designee, within 60 days of receiving notice of the Department's action. (§§ 14043.2, subd. (b), 14043.65, subd. (a); Cal. Code Regs., tit. 22, § 51000.50, subd. (i).) "he appeal procedure shall not include a formal administrative hearing under the Administrative Procedure Act and shall not result in reactivation of any deactivated provider numbers during appeal." (§ 14043.65, subd. (a).) The director or director's designee shall issue a final decision within 90 days of receipt of the appeal. (*Ibid.*) Any further appeal must proceed according to Code of Civil Procedure section 1085. (*Ibid.*)

"No applicant whose application for enrollment as a provider has been denied pursuant to Section 14043.2 [failure to disclose or false disclosure] . . .

---

[2] Lieblein notes that California's statutory disclosure requirements, including the corollary that failure to comply requires the Department to refuse to enter into a provider agreement or to terminate an existing agreement, generally track those of federal Medicaid law (42 C.F.R. §§ 455.104–455.106 (2005)). He then asserts: "Significantly, none of these federal Medicaid regulations requires a provider to disclose to the state Medicaid agency that its state license or permit had been placed on probation by a state regulatory agency"—Lieblein's situation, which California law required him to disclose.

It is not clear why Lieblein thinks this point is significant. If he means to imply that California may not impose any condition not stated in federal law, he neither argues the point nor cites apposite authority for it; thus the argument (if any) is forfeited. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 [23 Cal.Rptr.2d 73].) Lieblein cites *Doctor's Medical Laboratory, Inc. v. Connell* (1999) 69 Cal.App.4th 891 [81 Cal.Rptr.2d 829], but that decision holds only that the Department may not act in a manner that *directly clashes* with federal Medicaid law. (*Id.* at pp. 893–894, 896–897.)

may reapply for a period of three years from the date the application is denied. If the provider has appealed the denial, the three-year period shall commence upon the date of final action by the director or the director's designee." (§ 14043.65, subd. (b); see also Cal. Code Regs., tit. 22, § 51000.50, subd. (k).)

*Procedural history*

*The discipline*

In an administrative proceeding against Lieblein, the State Board of Pharmacy (the Board) notified him by letter dated January 7, 2002, that it was revoking his pharmacy permit, but staying the revocation and placing his license on probation for three years. The record and the parties' briefs do not reveal the grounds for the Board's action.

*Lieblein's application*

By letter dated April 1, 2003, the Department notified Lieblein that he was required to enroll for continued participation in Medi-Cal.[3] After receiving his response, the Department notified him by letter dated October 24, 2003, that he must submit his completed application package (consisting of an application, a provider agreement, and a disclosure statement) within 70 days.

On January 21, 2004, Lieblein submitted an application package, which the Department acknowledged by a letter dated January 26, 2004. However, the Department noted the package was incomplete in respects not material to this case, and returned it for completion or correction.

On July 2, 2004, Lieblein resubmitted his application package, which included the required disclosure statement.

Question 12 of the disclosure statement reads: "Has any licensing authority disciplined the license, certificate, or other approval to provide health care of the applicant or provider?" If the applicant checks the box marked, "Yes," he must state what action was taken and where, and give its effective dates. On Lieblein's application, the box marked, "No" is checked.

---

[3] The letter states that the Department is enrolling providers pursuant to California Code of Regulations, title 22, section 51000.55, which requires the Department to "periodically identify a specific provider of service category or subgroup of that category that will be subject to the continued enrollment requirements of this section." (Cal. Code Regs., tit. 22, § 51000.55, subd. (a).) The regulation does not state any criteria for the Department's decision, and the letter does not give any information on that score. There is no reason on this record to suppose that the discipline against Lieblein was a basis for the Department's action.

The following language appears at the end of the disclosure statement: "I declare under penalty of perjury under the laws of the State of California that the foregoing information in this document and the attachments is true, accurate, and complete to the best of my knowledge and belief. I declare that I have the authority to legally bind the applicant or provider." Lieblein signed the disclosure statement in the space provided immediately below this declaration.

By letter dated August 31, 2004, the Department notified Lieblein his application was denied for "failure to disclose the required information" (§ 14043.2), specifically that "the pharmacy permit (PHY21136) issued to Family Pharmacy is currently on probation." (Cf. Cal. Code Regs., tit. 22, § 51000.35, subd. (b)(5).) The letter stated that his provider numbers would be deactivated effective 20 days from the date of this notification and that he would not be allowed to reapply for three years from the date the application was denied. (§ 14043.65, subd. (b); Cal. Code Regs., tit. 22, § 51000.50, subd. (h).) It also informed him of his appeal rights. (§ 14043.65.)[4]

*Lieblein's administrative appeal*

Lieblein filed an appeal with OAHA on October 12, 2004. He contended: (1) His alleged nondisclosure was "an inadvertent mistake in checking boxes on his Medi-Cal Pharmacy Provider Application." (2) An employee (Lieblein's store manager) filled out most of the application, including question 12 of the disclosure statement; Lieblein merely signed the application without catching the error. (3) As Lieblein's discipline was a matter of public record, "it would have been ludicrous for [Lieblein] not to disclose it." (4) Lieblein's long-established family business should not be shut down for an inadvertent mistake. (5) "[F]ailure to disclose the required information" must mean the *intentional* failure to do so.

In an appeal finding signed on January 20, 2005, an OAHA hearing officer stated: "Counsel for the Provider . . . has noted that the [application] was erroneously completed by a subordinate of Mr. Lieblein. While this Office understands that mistakes do happen, denying on a submitted application that specifically asks about professional [*sic*] and licensure that such an action has occurred is negligent. There is an expectation by the MediCal [*sic*] Assistance Program that applications will be free of material error. PEB [Provider

---

[4] As mentioned above, this section provides among other things that once a provider submits an administrative appeal, the three-year bar on reapplying starts on the date of final action on the appeal by the director or the director's designee, not from the denial of the application. (§ 14043.65, subd. (b).) The Department's letter, which of course predated any appeal, did not mention this; it mentioned only the three-year period from denial of an application. This appeal does not require us to decide when the three-year period begins.

Enrollment Branch] has shown that Mr. Marvin Lieblein and Family Pharmacy did not acknowledge a sanction by a professional or governmental agency as required, and this degree of error is unacceptable. The application is denied."

By letter dated January 28, 2005, the Department notified Lieblein it had adopted the hearing officer's finding as its decision.

*Lieblein's petition for writ of mandate*

On February 14, 2005, Lieblein filed a petition for peremptory writ of mandate in Sacramento County Superior Court. He averred that he had owned Family Pharmacy, located in Long Beach, California, for around 35 years, and that most of its medical customers are Medi-Cal patients. As relevant on appeal, he argued the Department's decision must be set aside because:

(1) Under section 14043.26, subdivision (d), the Department lost the authority to deny the application after the statutory deadline of 180 days to process it had passed.

(2) Under section 14043.2, subdivision (a), in response to Lieblein's alleged nondisclosure the Department was authorized *either* to deny the application *or* to suspend Lieblein temporarily from Medi-Cal, including the temporary deactivation of his provider numbers. Instead, it had unlawfully done both.

(3) The Department's administrative appeal procedure (§ 14043.65) violates due process under the controlling federal Medicaid regulation and the state and federal Constitutions. Debarment of a Medi-Cal provider constitutes a deprivation of liberty; furthermore, Lieblein and Family Pharmacy will have to disclose the debarment to other healthcare payors, to their patients, and to referring physicians. Therefore, due process required that they receive a meaningful opportunity to be heard as to the denial of the application, including live testimony from which the hearing officer could "make the appropriate and necessary credibility determinations with respect to the reason why the wrong box was checked on the application." But section 14043.65 bars live testimony; thus the hearing officer could not "make an accurate and complete finding."

(4) The Department's decision was arbitrary and capricious because "the 'false' information in the application was the result of an inadvertent mistake and not the result of any intent to mislead [the Department]." Neither the plain language of the statutory scheme nor its legislative intent can justify debarring a 35-year participant in Medi-Cal on this basis. "The intent of the

reenrollment application process was to eliminate fraud and abuse in the Medi-Cal program, not to punish providers who have made inadvertent mistakes which are not relevant to the honesty or veracity of the applicant."

The Department's responsive points and authorities asserted:

(1) There was no failure to act on Lieblein's petition within 180 days. Well within that time limit, the Department notified Lieblein his application was incomplete and needed to be resubmitted. (Cf. § 14043.26, subd. (d).) After he resubmitted the application, the Department denied it the next month, also well within the statutory time limit.

(2) Decertification of provider numbers necessarily follows from the denial of continued enrollment. Thus, Lieblein's claim the Department could do only one or the other was an absurd reading of section 14043.2, subdivision (a). It also ignored section 14043.28, subdivision (b)(1), which expressly requires both actions.

(3) The Department's administrative appeal procedure does not violate due process. Due process does not necessarily require an evidentiary hearing at which live testimony could be presented. If Lieblein failed to disclose required information, this failure mandated denial of his application without regard to intent or credibility. Furthermore, the government's interest in preventing provider fraud and ensuring the fiscal integrity of Medi-Cal militates against requiring a full-blown evidentiary hearing in every appeal.

In reply, Lieblein raised a new untimeliness claim. According to him, the Department missed the deadline set by section 14043.26, subdivision (e)(1), for notifying him of its decision after he resubmitted his application on July 2, 2004. The statute required notice to be given no later than 60 days after the Department received the resubmitted application, a period that ended on August 31, 2004. The Department's written notice of its decision bore that date. However, the Department failed to show it mailed the letter on that date, and there is no presumption that a letter is mailed on the day it is dated. Because the Department did not meet the deadline, Lieblein was entitled to provisional provider status by operation of law. (Cf. §§ 14043.26, subds. (d)(3), (g), 14043.27.)

*The trial court's tentative ruling and judgment*

On April 15, 2005, the trial court issued a tentative ruling denying Lieblein's petition. The court found in part:

(1) The Department complied with all statutory deadlines for processing the application. Lieblein had the burden to show the Department did not send

notice of its denial of his application within 60 days after receiving the resubmitted application. He had not done so. The Department is presumed to have complied with its duties, and Lieblein failed to rebut the presumption.

(2) Lieblein's argument that the Department could not both deny his application and suspend him from the Medi-Cal program lacked merit. The denial of his application required his suspension from the program.

(3) The administrative appeal proceeding satisfied due process. Lieblein was allowed to offer written evidence to explain how the application was filled out and signed; he failed to do so other than to say his employee filled it out. Since he did not provide any fuller explanation, the lack of an oral hearing did not deprive him of any due process rights. In any event, the hearing officer apparently accepted Lieblein's claim of negligence but found the application was properly denied.

The court thereafter entered judgment adopting its tentative ruling.

## DISCUSSION

### I

■ In enacting section 14043 et seq., the Legislature chose to make the Department's decisions appealable under Code of Civil Procedure section 1085 (ordinary mandamus) rather than Code of Civil Procedure section 1094.5 (administrative mandamus). (§ 14043.65, subd. (a).) Under Code of Civil Procedure section 1085, a writ can be granted only where the administrative agency has a clear, present, and usually ministerial duty to perform, and the petitioner has a clear, present, and beneficial right to the performance of that duty. (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; *California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827 [117 Cal.Rptr.2d 595] (*CCSO*).)

■ "Where a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards. [Citation.] Where only one choice can be a reasonable exercise of discretion, a court may compel an official to make that choice. [Citation.]" (*CCSO, supra*, 96 Cal.App.4th at p. 827.)

"The trial court's review of the respondent's action is limited to determining whether the actions were arbitrary, capricious, entirely lacking in evidentiary support or contrary to required legal procedures. [Citations.]" (*Valnes v. Santa Monica Rent Control Bd.* (1990) 221 Cal.App.3d 1116, 1119 [270

Cal.Rptr. 636].) On appeal, we ordinarily inquire only whether the trial court's findings and judgment are supported by substantial evidence. However, we decide pure questions of statutory law independently. (*Apple Computer, Inc.* v. *Appeals Bd.* (2003) 105 Cal.App.4th 1355, 1365 [130 Cal.Rptr.2d 335]; *CCSO, supra,* 96 Cal.App.4th at p. 827.)

## II

Lieblein contends the Legislature did not intend for existing providers to be debarred for unintentional "[d]isclosure [e]rrors." On the contrary, the statutory scheme's plain language—the best evidence of legislative intent—calls for debarment of both new applicants and existing providers who provide materially false information, no matter why. So far as Lieblein claims the statutory scheme on its face raises constitutional problems, we disagree.

### The statutory scheme

■ Our primary task in construing a statute is to determine the Legislature's intent. We turn first to the words themselves. If they are clear and unambiguous, there is no need for construction: The statute's plain language establishes what the Legislature intended. (*People* v. *Statum* (2002) 28 Cal.4th 682, 689–690 [122 Cal.Rptr.2d 572, 50 P.3d 355].)

In focusing on the words of a statute, we give them their ordinary meaning. (*California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) We may not add to or alter them to accomplish a purpose not apparent on the face of the statute or from its legislative history. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

■ Here, the key statutes clearly establish that the Legislature meant the false disclosure provisions of section 14043 et seq. to act as strict liability rules. In other words, an applicant's materially false statement, or the failure to disclose material information, regardless of intent or existing provider status, requires the Department to exclude the violator from Medi-Cal for at least three years (unless he prevails on appeal).

To recapitulate: Section 14043.2, subdivision (a), states: "[I]n order to be enrolled as a provider, or for enrollment as a provider to continue, an applicant or provider may be required to sign a provider agreement and shall disclose all information as required in federal medicaid [*sic*] regulations and any other information required by the department. . . . Failure to disclose the required information, or the disclosure of false information, shall result in denial of the application for enrollment or shall make the provider subject to temporary

suspension from the Medi-Cal program, which shall include temporary deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program."[5]

■ Section 14043.26, subdivision (a), says the Department may require new applicants or existing providers to submit an "application package" for enrollment or continued enrollment.

Section 14043.26, subdivision (d)(4)(A), requires the Department to notify "an applicant or provider" within 180 days after receiving the application package if the application package is denied pursuant to section 14043.2.

Section 14043.28, subdivision (b)(1), provides: "If an application package is denied under subparagraph (A) . . . of paragraph (4) of subdivision (d) of Section 14043.26, . . . all existing provider numbers assigned to the applicant or provider shall be deactivated and the applicant or provider shall be removed from enrollment in the Medi-Cal program by operation of law."

■ Section 14043.28, subdivision (a), states that if an application package is denied under section 14043.26, which includes denial for failure to disclose information under section 14043.2 (§ 14043.26, subd. (d)(4)(A)), the applicant or provider may not reapply for three years. (See also § 14043.26, subd. (f)(2)(C) [same result where Department discovers failure to disclose through background check].)

Finally, section 14043.65 authorizes applicants and providers to pursue an administrative appeal.

---

[5] The only further substantive reference to "temporary suspension" from the program with "temporary deactivation" of provider numbers is found in section 14043.36, which provides in part: "(a) . . . If it is discovered that a provider is under investigation by the department or any state, local, or federal government law enforcement agency for fraud or abuse, that provider shall be subject to temporary suspension from the Medi-Cal program, which shall include temporary deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program. [¶] (b) The director shall notify in writing the provider [sic] of the temporary suspension and deactivation of the provider's Medi-Cal provider number or numbers, which shall take effect 15 days from the date of the notification. . . . [P]roceedings after the imposition of sanctions provided for in subdivision (a) shall be in accordance with Section 14043.65."

Sections 14043.2 and 14043.36 were enacted in 1999. (Stats. 1999, ch. 146, § 37, eff. July 22, 1999; amended by Stats. 2000, ch. 322, §§ 17, 19.) Sections 14043.26 and 14043.28, which detail the application procedures generally prescribed by section 14043 et seq., were enacted in 2003. (Stats. 2003, ch. 601, §§ 4, 6.) It is possible that the Legislature specified in section 14043.28, subdivision (b)(1), that the denial of an application package for violation of the disclosure provisions results in "remov[al] from enrollment in the Medi-Cal program by operation of law," rather than "temporary suspension" as stated in section 14043.2, subdivision (a), because the Legislature realized as of 2003 that deactivating provider numbers even "temporarily" has the effect of removing the provider from the program "by operation of law" unless and until the numbers are reactivated.

■ Not one of these provisions requires the Department to establish that the provision of false information was intentional, willful, or fraudulent before it can impose sanctions. Rather, those sanctions, including deactivation of provider numbers and debarment from reapplying for three years, follow inexorably from violation of the disclosure provisions per se. (Furthermore, they follow equally whether or not the applicant has been enrolled in the Medi-Cal program before.)

If the Legislature had meant to require proof of intent or mens rea, it could easily have said so. We may not rewrite the statutory scheme to insert that requirement. (*Burden v. Snowden, supra,* 2 Cal.4th at p. 562.) Moreover, it would be understandable for the Legislature not to impose upon the Department the onerous burden of proving an applicant's mental state.

### Lieblein's arguments

Arguing to the contrary, Lieblein asserts: (1) Existing providers, as opposed to new applicants, have a constitutionally protected liberty interest that is violated by debarment from Medi-Cal. (2) To respect this liberty interest, it is necessary to maintain the distinctions made in the statutory scheme between existing providers and new applicants. (3) This requires construing the statutes to avoid the constitutional difficulties and absurd or unjust results that would follow from a literal construction. (4) The statutes distinguish between existing providers and new applicants in that (a) under section 14043.2, "applicants" who violate the disclosure rules are denied enrollment in Medi-Cal, but "providers" who do the same are only temporarily suspended, and (b) under section 14043.65, only "applicants" whose applications are denied, not "providers," are barred from reapplying to the program for three years. (5) To respect these distinctions and properly protect existing providers' liberty interests, the statutory scheme should be construed so as (a) to impose only temporary suspension on existing providers who violate the disclosure requirements, and (b) to lift that suspension if the violation is not shown to stem from fraud or abuse.

As stated above, Lieblein makes a statutory argument based on sections 14043.2, subdivision (a) (failure to disclose information), and 14043.65, subdivision (b).[6] We shall conclude the argument lacks merit.

Section 14043.65[7] authorizes administrative appeals by applicants and providers.

---

[6] He also fails to cite the statute properly in his table of authorities, which incorrectly indicates section 14043.65 is cited only on page 7 of the appellate brief, which contains background, not argument.

[7] Section 14043.65 provides: "(a) Notwithstanding any other provision of law, any applicant whose application for enrollment as a provider . . . is denied; or any provider who is denied

Section 14043.65, subdivision (b), states in its first sentence, which Lieblein quotes: "No *applicant* whose application for enrollment as a provider has been denied pursuant to Section 14043.2, 14043.36, or 14043.4 may reapply for a period of three years from the date the application is denied." (Italics added.) This sentence was quoted in the Department's letter notifying Lieblein of deactivation of his provider number. From the statute's use of the word "applicant" alone, rather than "applicant or provider," Lieblein concludes the Legislature meant the three-year sanction to apply only to new applicants.[8]

However, the second sentence of section 14043.65, subdivision (b) states: "If the *provider* has appealed the denial, the three-year period shall commence upon the date of final action by the director or the director's designee." (Italics added.)

 The statutory language is arguably unclear, because it refers to a waiting period for providers without actually imposing such a waiting period on providers (in comparison to the first sentence, which imposes a waiting period on applicants). Nevertheless, "[W]e must not view isolated language out of context, but instead interpret the statute as a whole, so as to make sense of the entire statutory scheme. [Citation.]" (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1135 [90 Cal.Rptr.2d 804, 988 P.2d 1083].) As we shall explain, a waiting period for providers is expressly set forth in other statutes applicable to this case, and nothing in section 14043.65 relieves providers from the waiting period imposed elsewhere.

 Thus, the Department asked Lieblein to fill out the forms in accordance with regulation 51000.50 (Cal. Code Regs, tit. 22, § 51000.50), which was based on section 14043.26,[9] which authorizes the Department not only to take new applications from new applicants, but also to require existing

---

continued enrollment . . . who has been temporarily suspended, . . . [or] who has had one or more provider numbers used to obtain reimbursement from the Medi-Cal program deactivated, . . . may appeal this action by submitting a written appeal, including any supporting evidence, to the director or the director's designee. . . . The decision of the director or the director's designee [on the appeal] shall be final. Any further appeal shall be required to be filed in accordance with Section 1085 of the Code of Civil Procedure.

"(b) No applicant whose application for enrollment as a provider has been denied pursuant to Section 14043.2 . . . may reapply for a period of three years from the date the application is denied. If the provider has appealed the denial, the three-year period shall commence upon the date of final action by the director or the director's designee."

[8] "Applicants" and "providers" are distinct terms of art under the statutory scheme, in that applicants are applying for enrollment in the Medi-Cal program, while providers are already enrolled. (§ 14043.1, subds. (b), (n).)

[9] Section 14043.26 provides in part: "(a)(1) On and after January 1, 2004, an *applicant that is not currently enrolled* in the Medi-Cal program, *or a provider applying for continued enrollment, upon written notification from the department that enrollment for continued participation of all providers in a specific provider of service category or subgroup of that*

providers to apply for continued enrollment. Section 14043.26 uses the term "application package" for both new applicants and existing providers. (§ 14043.26, subd. (a), quoted in fn. 9, *ante*; see also, § 14043.26, subd. (c)(1) ["If the applicant package submitted pursuant to subdivision (a) is from an applicant or provider who meets the criteria listed"].)

Section 14043.26 authorizes the Department to deny application packages for failure to disclose information under section 14043.2. (§ 14043.26, subd. (d)(4)(A); see also § 14043.26, subd. (f)(2) [denial of application where Department discovers failure to disclose information during background check].)

Where an existing provider's section 14043.26 application package is denied for providing false information or failure to disclose (§ 14043.2), following a background check, section 14043.26 says the provider may not reapply for three years. (§ 14043.26, subd. (f)(2)(C) ["if the discrepancies or failure to meet program requirements . . . were related to grounds for denial under Section 14043.2 . . . , the applicant or provider may not reapply for three years"].)

Additionally, section 14043.28 independently imposes a three-year waiting period before the applicant or provider can reapply for enrollment or continued enrollment. Thus, section 14043.28 provides in part: "(a)(1) If an application package [which, as indicated, includes existing providers seeking continued enrollment] is denied under Section 14043.26 or provisional provider status or preferred provisional provider status is terminated[10] under Section 14043.27, the applicant or provider may not reapply for enrollment or continued enrollment in the Medi-Cal program or for participation in any health care program administered by the department or its agents or contractors for a period of three years from the date the application package is denied or the provisional provider status is terminated, or from the date of the final decision following an appeal from that denial or termination, except as provided otherwise [in specified statutory provisions] . . . ."

 We thus conclude a three-year waiting period applies to existing providers, such as Lieblein, whose section 14043.26 applications were denied under section 14043.2 for disclosing false information[11] and for failing to disclose

---

*category to which the provider belongs will occur* . . . shall submit a complete *application package* for *enrollment, continuing enrollment*, or enrollment at a new location or a change in location." (Italics added.)

[10] No one asserts Lieblein was a "provisional provider" or a "preferred provisional provider," though they too are subject to the waiting period.

[11] Lieblein provided false information when he answered, "no" to the question whether his license was subject to discipline.

required information. Although a question may arise as to whether the three-year period starts on the date of denial of the application or the date of denial of the administrative appeal, Lieblein makes no argument on this point, and we need not address the matter in this appeal.[12]

Lieblein's remaining point is based on the following sentence from section 14043.2, subdivision (a): "Failure to disclose the required information, or the disclosure of false information, *shall result in denial of the application for enrollment or shall make the provider subject to temporary suspension from the Medi-Cal program,* which shall include temporary deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program." (Italics added.) Lieblein appears to believe the Department may suspend a provider but it cannot also deny the application, and the three-year waiting period applies only to denials of applications. Lieblein points out that only an existing provider is "subject to temporary suspension from the Medi-Cal program," and therefore the Department should have suspended him only until he demonstrated lack of fraud.

However, as we have pointed out, both section 14043.26, subdivision (f)(2)(C), and section 14043.28, expressly contemplate that a provider's application package can be denied. Moreover, since the "temporary suspension" sanction "shall include temporary deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program" (§ 14043.2, subd. (a)), it has the same practical effect as denying an application. If provider numbers are deactivated, the provider cannot obtain reimbursement from Medi-Cal; thus, for all practical purposes he is debarred from the program unless and until his provider numbers are reactivated. Thus the distinction between "temporary suspension" and the denial of an application is a distinction without a difference.

Finally, Lieblein cites an opinion of the state Attorney General (59 Ops.Cal.Atty.Gen. 153 (1976)) for the proposition that "existing licensees [of the Department] have substantially greater rights than new applicants." However, that opinion does not construe the statutory scheme at issue here. It addresses licensing and discipline under the Health Facilities Act (Health & Saf. Code, § 1250 et seq.) and the California Community Care Facilities Act (Health & Saf. Code, § 1500 et seq.). Lieblein does not attempt to show that

---

[12] The Department says section 14043.65, subdivision (b), starts the three-year waiting period on the date of denial of the administrative appeal because (as asserted by the Department without citation of evidence) the deactivation of Lieblein's provider number was stayed pending the administrative appeal. However, Lieblein's reply brief correctly notes section 14043.65, subdivision (a), states, "The appeal procedure . . . shall not result in reactivation of any deactivated provider numbers during appeal." Thus, for purposes of this appeal, as stated in the Department's notification letter of August 31, 2004, the deactivation took effect 20 days after the date of the notification letter.

these provisions are significantly similar to those that govern Medi-Cal providers and applicants. Thus the point does not require further discussion.

Lieblein argues we must "interpret" the statutory scheme to preserve its constitutionality. However, assuming that Lieblein has a constitutional liberty interest in continuing to provide services for Medi-Cal, we see no reason why our construction of the statutory scheme, which relies upon the plain language of the statutes, violates any constitutional right of Lieblein's.

*Conclusion*

■ Lieblein has failed to show grounds for reversal. Once the Department discovered Lieblein had provided materially false information and had failed to disclose the discipline of his license, it properly denied his application for continued enrollment and debarred him from participation in Medi-Cal.

### III

Lieblein contends the Department's administrative appeal procedure (§ 14043.65, subd. (a)) violates due process because it does not permit live testimony, and his inability to put on such evidence undermined his case.[13] We disagree with both points.

■ The liberty interest of a Medi-Cal applicant debarred from the program for violating the disclosure provisions implicates constitutional due process. (See *Golden Day Schools, Inc. v. State Dept. of Education* (2000) 83 Cal.App.4th 695, 703–708 [99 Cal.Rptr.2d 917] (*Golden Day*).) However, it does not follow that any particular procedure is constitutionally required in an administrative hearing of the applicant's appeal.

"Due process is the opportunity to be heard at a meaningful time and in a meaningful manner. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333

---

[13] In Lieblein's brief, this argument is made under the heading, "Due Process of the Law Requires State DHS to Have Given Family Pharmacy Substantially More Than a Written-Only Hearing Before Debarring It."

At one point under this heading, Lieblein argues, "a debarred government contractor is entitled to be afforded due process of the law *prior to* the debarment going into effect." This argument is not fairly embraced by the brief's heading that a written-only hearing violated due process. Rule 14(a)(1) of the California Rules of Court provides as pertinent: "(1) Each brief must: [¶] . . . [¶] (B) State each point under a separate heading or subheading summarizing the point . . . ."

Because Lieblein's argument as to the timeliness of his debarment was not properly headed, we decline to address his argument on the merits. (See *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1346 [101 Cal.Rptr.2d 591].)

[47 L.Ed.2d 18, 96 S.Ct. 893].) Unlike some legal rules, due process ' "is not a technical conception with a fixed content unrelated to time, place and circumstance." [Citation.]' (*Id.* at p. 334 [47 L.Ed.2d at p. 33].) Rather, it ' "is flexible and calls for such procedural protections as the particular situation demands." [Citation.]' (*Ibid.*) Determining whether a particular administrative procedure is constitutionally sufficient requires analysis of the governmental and private interests involved: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and any probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (*Id.* at p. 335 [47 L.Ed.2d at p. 33].)" (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 543 [133 Cal.Rptr.2d 527] (*Southern Cal. Underground*).)

In *Mathews v. Eldridge, supra,* 424 U.S. 319 [47 L.Ed.2d 18], applying the above test, the United States Supreme Court considered what process is due to persons whose receipt of Social Security disability benefits, a constitutionally protected property interest, has been terminated. The court held that a full evidentiary hearing including live testimony is not required prior to the adverse administrative action, because: (1) recipients normally can obtain other temporary sources of income; (2) the pretermination decision usually turns on objective, standardized reports by physician specialists, not raising credibility issues; (3) this evidence by its nature is more amenable to written than to oral presentation; (4) the recipient's representative has full access to all information relied on by the state agency; (5) before benefits are terminated, the recipient is informed of the agency's tentative decision with reasons and supporting evidence; (6) the recipient then has the opportunity to submit additional evidence or argument; and (7) requiring full pretermination evidentiary hearings in all cases would impose a significant administrative and financial burden on the state agencies. (*Id.* at pp. 340–348 [47 L.Ed.2d at pp. 36–41].) In light of these facts, although the private interest at stake is significant, the risk of an erroneous deprivation of such interest through existing procedures and the probable value of adding further procedures is low; on the other hand, given the government's interest in conserving scarce fiscal and administrative resources, adding procedures that increase the government's fiscal and administrative burden cannot be justified. (*Ibid.*)

Here, although the applicant's liberty interest is significant, so too is the Department's interest: The state's continuing receipt of federal assistance for Medi-Cal depends on providers' ability and willingness to perform according to law. Thus, the issue turns on whether the Department's appeal procedure incurs a significant risk of erroneously upholding a decision to debar a deserving applicant, whether allowing live testimony would be likely to

lessen any such risk, and whether the increased fiscal and administrative burden on the Department from allowing live testimony would be justified. We conclude that the answer to these questions is no.

In the context of debarment from the Medi-Cal program, almost all of the reasons given by *Mathews v. Eldridge, supra,* 424 U.S. 319, for not requiring an evidentiary hearing with live testimony apply with equal force. The evidence the Department must consider when denying an application for nondisclosure or false disclosure is objective, consisting of the applicant's disclosure statement and any matter tending to show a violation of the requirements. Such evidence, by its nature, is more amenable to written than to oral presentation. The applicant receives notice of that evidence, along with the Department's reasoning, when the Department informs him of its decision. In challenging the decision, the applicant is entitled to retain counsel and to present all written evidence and argument that support his position. It would significantly burden the Department fiscally and administratively to hold a full-blown evidentiary hearing with live testimony every time it denies a would-be Medi-Cal provider's application based on nondisclosure or false disclosure. Finally, since the applicant's intent is not material, no benefit would come from allowing live testimony on that issue, and Lieblein has not suggested any other purpose for such testimony. On the contrary, an applicant can prevail against a charge of disclosure violation only by showing it to be factually mistaken, and no reason appears why such a showing could not and should not be in writing. Therefore, the Department's procedure, which restricts the appellant to written evidence, does not impair his right to due process because it permits him to present all evidence that is material to the appeal.

Lieblein does not cite any California decisions that have found a due process violation under *Mathews v. Eldridge, supra,* 424 U.S. 319, from the lack of provision for live testimony in an administrative hearing, and we have found none. In fact, the decisions most closely on point have held, as we do, that live testimony was not required in the administrative proceedings at issue.

In *Rodriguez v. Department of Real Estate* (1996) 51 Cal.App.4th 1289 [59 Cal.Rptr.2d 652] (*Rodriguez*), the court held that the defendant commissioner did not violate the plaintiff broker's due process rights by suspending his license "as an automatic consequence of granting a defrauded client's claim for payment from the department's client recovery account" without providing a full evidentiary hearing, including live testimony, prior to the suspension. (*Id.* at pp. 1292, 1294.) The applicable statutory scheme did not require such a hearing, but did require that the broker receive notice of the client's claim and the opportunity to submit written argument contesting the claim. (*Id.* at p. 1296.)

To decide the issue, the *Rodriguez* court used a test derived from case law construing the California Constitution, which weighs the factors identified in *Mathews v. Eldridge, supra,* 424 U.S. 319, plus "the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible government official." (*Rodriguez, supra,* 51 Cal.App.4th at p. 1297, and cases cited.) Under this test, the court found that, although the broker had an interest affected by the government action, there was little risk of erroneously depriving him of that interest: the statutory scheme set out specific criteria the judgment creditor had to meet in submitting his claim, the broker had the opportunity to submit written argument challenging any or all of the criteria, and the decision maker exercised no discretion but only determined whether the judgment qualified for payment under the statute. (*Id.* at pp. 1297–1298.) These factors, plus the requirement that the judgment creditor obtain a final judgment to be eligible for payment from the department's account and the broker's right to challenge an adverse decision by writ of ordinary mandamus, provided sufficient procedural protection for the broker. (*Id.* at p. 1298.) The broker's "dignitary interest" in notice and opportunity to be heard was sufficiently satisfied by giving him notice of the claim and its consequences if granted, plus the right to oppose it by written argument before the Commissioner. (*Id.* at pp. 1298–1299.) Finally, the administrative and fiscal burden of requiring a full evidentiary hearing with live testimony in every such case would be great. (*Id.* at p. 1299.) For all these reasons, even though the procedure at issue might ultimately lead to the mandatory suspension of the broker's license, due process did not require such an evidentiary hearing. (*Id.* at pp. 1299–1300.)

Similarly, in *Holmes v. Hallinan* (1998) 68 Cal.App.4th 1523 [81 Cal.Rptr.2d 174] (*Holmes*), the appellate court found no due process violation where a senior investigator with the San Francisco District Attorney's Office was fired for falsifying workers' compensation forms and dishonesty. (*Id.* at p. 1526.) The investigator (an at-will employee) was not permitted to call live witnesses at his pretermination hearing, but was allowed to present evidence and argue his case in writing. (*Id.* at pp. 1528–1529, 1530.) In a petition for writ of administrative mandamus, he alleged a due process violation from the denial of live testimony, among other things. (*Id.* at pp. 1529–1530.) The trial court granted the writ, but the appellate court reversed. (*Id.* at p. 1530.)

The appellate court found that, although the stigma associated with the charges against the plaintiff gave him a protected liberty interest entitling him to due process despite his at-will status, the government's interest in expeditiously terminating law enforcement officers for poor moral character was also great. (*Holmes, supra,* 68 Cal.App.4th at pp. 1531–1532.) The written evidence the plaintiff was allowed to submit, along with that disclosed to him before the hearing, was sufficient for the district attorney to resolve any factual

issues, and the plaintiff had failed to show how live testimony could have thrown any further light on those issues. (*Id.* at pp. 1527–1529, 1532–1533.) Under the circumstances, " '[t]he judicial model of an evidentiary hearing' " was not required. (*Id.* at p. 1531, quoting *Mathews v. Eldridge, supra,* 424 U.S. at p. 348 [47 L.Ed.2d at p. 41].)

In both *Rodriguez, supra,* 51 Cal.App.4th 1289, and *Holmes, supra,* 68 Cal.App.4th 1523, the potential cost to the plaintiffs was, if anything, greater than the cost to Lieblein here: Where Lieblein stood to lose only the opportunity to continue participating in a government program, the plaintiffs in *Rodriguez* and *Holmes* stood to lose their jobs or livelihoods.[14] Furthermore, in *Holmes*, if not in *Rodriguez*, credibility issues were clearly in play. Nevertheless, the appellate courts in both cases rejected the claim that due process required an evidentiary hearing with live testimony. We conclude, as did those courts, that the notice and opportunity to be heard provided under the administrative appeal procedure satisfied due process.

Lieblein relies on *Golden Day, supra,* 83 Cal.App.4th 695, and *Southern Cal. Underground, supra,* 108 Cal.App.4th 533. His reliance is misplaced because neither decision finds a due process violation from the deprivation of live testimony. In *Golden Day*, the court found a due process violation because the auditor who determined that the appellant's audits were improperly done also sat as a judge in the appeal from that finding. (*Golden Day, supra,* 83 Cal.App.4th at p. 710.) In *Southern Cal. Underground*, where live testimony and cross-examination were allowed, the issues were factually complex, involving charges that the appellant had engaged in a pattern of corrupt practices while working on 11 different projects for a municipality. (*Southern Cal. Underground, supra,* 108 Cal.App.4th at pp. 539–541.) Here, unlike in *Golden Day*, the administrative appeal was entirely conducted by an independent hearing officer. And unlike in *Southern Cal. Underground*, it did not present factually complex issues posing credibility problems. Therefore, neither decision supports Lieblein's claim that due process was denied him because he could not put on live testimony.

## IV

Lieblein contends the Department lost jurisdiction over his application by missing the statutory deadline for notifying him of its decision on the application, and therefore he was entitled to provisional provider status by operation of law. Lieblein is mistaken.

Section 14043.26, subdivision (e)(1), provides (italics added):

---

[14] We are aware that Lieblein alleges his business will be shut down if he is debarred from the Medi-Cal program, but he has not supported that allegation with any objective evidence.

"If the application package that was noticed as incomplete under subdivision (d) is resubmitted with all requested information and documentation, and received by the department within 35 days of the date on the notice, *the department shall, within 60 days of the resubmission, send a notice* that any of the following applies:

"(A) The applicant or provider is being granted provisional provider status for a period of 12 months, effective from the date on the notice.

"*(B) The application package is denied for any other reasons provided for in paragraph (4) of subdivision (d).*

"(C) The department is exercising its authority under Section 14043.37, 14043.4, or 14043.7 to conduct background checks, preenrollment inspections, or unannounced visits."

As mentioned above, the Department "noticed as incomplete" the application package Lieblein originally submitted. Lieblein resubmitted the application package on July 2, 2004. The Department notified him the resubmitted package was denied for failure to disclose required information, a reason "provided for in paragraph (4) of subdivision (d)," by letter dated August 31, 2004. Lieblein does not dispute that the letter was dated within 60 days of his resubmission of his application package. However, as below, he asserts the Department had the burden to prove it "sent" or mailed the letter on August 31, 2004, and failed to meet that burden.

The trial court rejected Lieblein's attempt to shift the burden to the Department because (1) he was the petitioner in the writ proceeding, and (2) it is presumed an official agency regularly performs its duties. The trial court also noted that Lieblein had not presented any evidence tending to rebut this presumption. We conclude the trial court was correct on all these points.

■ First, Lieblein does not cite authority to support his claim that the Department, respondent on the writ petition, had the initial burden of production on this issue. In fact, it is settled that "the party seeking the writ must make some showing that the body invested with discretion has acted arbitrarily, capriciously, fraudulently, or without due regard for his rights and that the action was prejudicial to him." (*Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 187 [153 Cal.Rptr. 56].)

■ Second, as the trial court observed (though without quoting or citing the statute), "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.) This is a presumption affecting the burden of proof. (Cf. Evid. Code, § 660.) In this case, this means that unless Lieblein produced

evidence to rebut the presumption, it would prevail. He did not do so. All he did in the trial court was to deny the existence of the presumption and improperly try to shift the burden to the Department.

As in the trial court, Lieblein asserts there is no presumption that a letter is mailed on the day it is dated. (Cf. *Cowan v. Tremble* (1931) 111 Cal.App. 458, 465 [296 P. 91].) That is immaterial here. The presumption stated in Evidence Code section 664 suffices, absent contrary evidence. (*El Morro Community Assn. v. California Dept. of Parks & Recreation* (2004) 122 Cal.App.4th 1341, 1351 [19 Cal.Rptr.3d 445].)

Thus, Lieblein has failed to show the trial court erred factually, and the court's finding that the Department sent notice within the 60-day deadline must be accepted on appeal because it is supported by substantial evidence. (*Valnes v. Santa Monica Rent Control Bd., supra*, 221 Cal.App.3d at pp. 1119–1120.) Therefore we need not consider the Department's contention that it would not matter legally if the Department had missed the deadline because that deadline is merely directory, not mandatory and jurisdictional. (*Cf. California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

## DISPOSITION

The judgment is affirmed. The California Department of Health Services shall receive its costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Robie, J., concurred.

**BLEASE, Acting P. J.,** Concurring.—I concur in the majority opinion because under the express provisions of Welfare and Institutions Code sections 14043.28, subdivision (a)(1) and 14043.26, subdivision (d)(4)(A), Lieblein must wait three years before reapplying for provider status under the Medi-Cal laws. That being the case there is no need for the majority opinion to refer to the provisions of section 14043.65, subdivision (b), and to do so may wrongly suggest that it governs all cases of provider status. It does not.[1]

Under Welfare and Institutions Code section 14043.28, subdivision (a)(1), if an application package "is denied under Section 14043.26 . . . the applicant *or provider* may not reapply for enrollment or continued enrollment in the Medi-Cal program . . . for a period of three years . . . ." (Italics added.) This

---

[1] Welfare and Institutions Code section 14043.26 refers to Welfare and Institutions Code section 14043.65 only in subdivision (i) with respect to the procedural provisions for appeal.

clearly applies to Lieblein as a provider because he comes within the provisions of section 14043.26, subdivision (d)(4)(A).

Welfare and Institutions Code section 14043.26 applies to applicants and providers who seek continuing enrollment, unless excepted by subdivision (a). It excepts certain clinics, health facilities, adult day health care providers, home health agencies and hospices.[2] (§ 14043.26, subd. (a)(1)–(6).) It appears clear that Lieblein is not excepted under these provisions, but is covered under subdivision (d)(4)(A), which applies to denials, as here, pursuant to section 14043.2.

Although the parties have not raised this issue, it appears the provisions of Welfare and Institutions Code section 14043.28, subdivision (a), which distinguish between appeals and nonappeals for the starting of the three-year period for reapplication, raise constitutional questions regarding the penalty for taking an appeal, since the period of taking an unsuccessful appeal would be added to the three-year period for reapplication.

A petition for a rehearing was denied March 27, 2006, and appellants' petition for review by the Supreme Court was denied June 14, 2006, S142623.

---

[2] These entities are not subject to the three-year rule of Welfare and Institutions Code section 14043.28 and consequently should not be subject to the three-year rule of Welfare and Institutions Code section 14043.65, subdivision (b), as the majority opinion implies.